# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-2076

_____

Barbara Petroski; Cathy Camden; Carla Collins; Stacey Oyer, individually and as representatives of the Rule 23 and 29 U.S.C. Section 216(b) classes certified by the U.S. District Court

*Plaintiffs - Appellants*

v.

H&R Block Enterprises, LLC; H&R Block Eastern Enterprises, Inc.; Does 1-50

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: March 11, 2014
Filed: May 2, 2014

_____

Before WOLLMAN, MURPHY, and GRUENDER, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

The plaintiffs filed suit against H&R Block, Inc., H&R Block Enterprises LLC, and H&R Block Eastern Enterprises, Inc. (collectively, H&R Block), alleging that the Fair Labor Standards Act (FLSA) requires H&R Block to compensate tax professionals for the time spent completing twenty-four hours of rehire training. The

district court[1] held that the tax professionals were not employees under the FLSA and thus were not entitled to compensation. The plaintiffs appeal from the grant of summary judgment in favor of H&R Block. We affirm.

## I.

H&R Block is a tax preparation service provider. It employs tax professionals who are primarily responsible for preparing tax returns for H&R Block's clients. The tax season begins in late December or early January and lasts until mid-April. H&R Block refers to the time of year that is not tax season as the "off-season" or the "pre-season." Due to the seasonal nature of the tax services industry, H&R Block requires the majority of its workforce only during the tax season.

A tax professional employed by H&R Block who seeks to work at H&R Block the following tax season must complete an employment application and participate in an interview. If hired to work the following tax season, the tax professional submits an I-9 Form regarding employment eligibility and enters into an employment agreement. The employment agreement sets forth the term of employment, which typically lasts only for the duration of the tax season. After the period set forth in the employment agreement ends, the tax professional is under no obligation to return to H&R Block for the following tax season, and H&R Block is under no obligation to hire the tax professional to work for H&R Block in the future. During the off-season, tax professionals are eligible to collect unemployment, and many work other jobs. From 2008 to 2012, H&R Block rehired approximately 268,804 of the tax professionals and did not rehire approximately 20,357.

---

[1]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

H&R Block requires current and former tax professionals to complete certain training to be eligible for rehire for the following tax season. The company handbooks explain that tax professionals must complete continuing professional education (CPE) to be eligible for rehire, but that meeting the CPE requirement is not a guarantee of future employment with H&R Block. During the time period at issue in this litigation, H&R Block required tax professionals to complete twenty-four hours of CPE.

Tax professionals are able to meet the rehire training requirement by taking courses offered by H&R Block or by taking courses offered by any other qualified provider. H&R Block offers both live and web-based courses on various topics, including adjustments, property income, corporations, estate planning strategies, investment income, and itemized deductions. Although some of the courses refer to its internal systems and software programs, most of the courses H&R Block offers are purchased from Commerce Clearing House, an entity unrelated to H&R Block. None of the courses entail working on actual client tax returns or meeting with actual clients. H&R Block charges twenty dollars for access to the courses it offers, and a tax professional may take as many courses as he or she likes.

H&R Block does not compensate tax professionals for the time they spend meeting the rehire training requirement. Prior to 2012, H&R Block did not communicate in writing to the tax professionals that they would not be paid for the CPE time, nor did it obtain written acknowledgment from the tax professionals that there would be no compensation for the rehire training. During the time period at issue in this litigation, no federal regulation required tax professionals to complete continuing education courses to prepare tax returns.

This lawsuit began as three separate actions. Named plaintiffs Barbara Petroski and Cathy Camden filed a purported collective action under the FLSA in the Western District of Missouri. Thereafter, two related cases were voluntarily transferred from

federal district courts in California and New York to the Western District of Missouri, where the district court granted the parties' joint motion to consolidate. The district court conditionally certified a FLSA collective action pursuant to 29 U.S.C. § 216(b), which consisted of persons who: (1) were currently or previously employed by H&R Block as tax professionals; (2) were not paid for the time spent completing mandatory rehire training after a tax season in order to be eligible to prepare returns for the next tax season; and (3) completed any of the required training on or after April 15, 2007.[2] Eligible tax professionals were required to opt in to the FLSA collective action.

As set forth above, the district court granted summary judgment in favor of H&R Block. The court rejected the plaintiffs' argument that their employment continued from one tax season to the next, instead concluding that the plaintiffs were trainees and not employees when they completed the twenty-four hours of rehire training. "[A]s trainees, Plaintiffs are not entitled to be compensated for their time spent at rehire training under the FLSA or California and New York law." D. Ct. Order of Apr. 8, 2013, at 17.

II.

We review *de novo* the district court's grant of summary judgment, viewing the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Rakes v. Life Investors Ins. Co. of Am.,

---

[2]The district court also certified California and New York class actions pursuant to Federal Rule of Civil Procedure 23. The California class included only tax professionals who were employed in California and completed any of the required training after March 4, 2006. The New York class included only tax professionals who were employed in New York and completed any of the required training after March 4, 2004. Eligible tax professionals were allowed to opt out of the California and New York classes. The parties agree that the state law claims are virtually identical to the federal claim. Named plaintiffs Carla Collins and Stacy Oyer represent the California and New York classes, respectively.

582 F.3d 886, 893 (8th Cir. 2009). Summary judgment is appropriate if there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

The FLSA requires that covered employees be paid at least minimum wage for hours worked. See 29 U.S.C. § 201 *et seq*. It defines "employee" as "any individual employed by an employer" and defines "employ" as to "suffer or permit to work." Id. § 203(e)(1), (g). "Whether or not an individual is an 'employee' within the meaning of the FLSA is a legal determination rather than a factual one." Donovan v. Trans World Airlines, Inc., 726 F.2d 415, 417 (8th Cir. 1984) (per curiam).

A.

The plaintiffs argue that the district court applied the wrong legal framework to determine whether the tax professionals were employees. They contend that the district court should have considered whether their employment with H&R Block continued from one tax season to the next. They argue that "workers can retain their 'employee' status during the interval between the completion of one period of employment and the commencement of another if, as a factual matter, they are customarily continued in their employment with recognition of their preferential claims to their jobs." Appellants' Br. 29. According to the plaintiffs, the district court should have applied the following two cases, which were brought under the National Labor Relations Act (NLRA): NLRB v. Waterman S.S. Corp., 309 U.S. 206 (1940), and NLRB v. Labor Ready, Inc., 253 F.3d 195 (4th Cir. 2001).

"[I]n determining who are 'employees' under the [FLSA], common law employee categories or employer-employee classifications under other statutes are not of controlling significance." Walling v. Portland Terminal Co., 330 U.S. 148, 150 (1947); see also Powell v. U.S. Cartridge Co., 339 U.S. 497, 528 (1950) ("Our decisions have made one thing clear about the Fair Labor Standards Act: its

applicability is not fixed by labels that parties may attach to their relationship nor by common law categories nor by classifications under other statutes."). While we recognize that the NLRA and the FLSA were enacted as part of the same remedial social legislation, see Rutherford Food Corp. v. McComb, 331 U.S. 722, 723 (1947), we find Waterman and Labor Ready to be distinguishable and decline to apply them to this case.[3]

In Waterman, the Supreme Court held that the employer violated the NLRA when it replaced the crews of the ships "Bienville" and "Fairland" with crews affiliated with a different labor union. The employer had laid up the ships for dry-docking and repairs for less than a month. 309 U.S. at 209. According to the employer, the crews' tenure of employment ended when the ships were laid up, the wages were paid, and the men had signed statutory articles, which released all claims for wages for the past voyage. Id. at 211. The Supreme Court decided, as a factual matter, that "a seaman's tenure and relationship to his ship and employer are not terminated by the mere expiration of articles when his ship lays up in dry dock or for repairs." Id. at 218. In Labor Ready, the United States Court of Appeals for the Fourth Circuit invalidated the employment agency's policy of barring union solicitation by its incumbent temporary workers. 253 F.3d at 201. In doing so, it applied Waterman and rejected the employment agency's argument that "the employment relationship [between the agency and an incumbent temporary worker] is dissolved each evening and not renewed unless and until the worker receives another assignment." 253 F.3d at 199.

---

[3]We note that no court has applied Waterman or Labor Ready to a case brought under the FLSA. Courts have considered whether the employment of seasonal employees continued during the off-season in cases brought under the Selective Training and Service Act of 1940 and under the Worker Adjustment and Retraining Notification Act. See Bochterle v. Albert Robbins, Inc., 165 F.2d 942 (3d Cir. 1947); United States ex rel. Stanley v. Wimbish, 154 F.2d 773 (4th Cir. 1946); Marques v. Telles Ranch, Inc., 867 F. Supp. 1438 (N.D. Cal. 1994).

Unlike the crewmen in <u>Waterman</u> and the incumbent temporary workers in <u>Labor Ready</u>, the tax professionals are not trying to prevent the defendant company from infringing upon the right to engage in union activity. Instead, they are seeking to compel H&R Block to pay wages. While the decisions in those cases protected the right to organize during the interval between the completion of one voyage or job and the commencement of another, the plaintiffs here ask us to compel payment for training completed during a time when they were doing no other work for H&R Block. Moreover, unlike the short and often variable intervals between work assignments in <u>Waterman</u> and <u>Labor Ready</u>, the tax off-season lasted most of the year. From mid-April through late December or early January, the tax professionals were free to engage in other employment or seek unemployment compensation, and the plaintiffs concede that their employment agreements stated that "term of the Agreement shall end" at the conclusion of the tax season. Then, before being rehired, the tax professionals had to complete rehire training, submit an application, attend an interview, and be offered a position. The legal and factual contexts of <u>Waterman</u> and <u>Labor Ready</u> are thus very different than those in the present case. We hold that the district court engaged in the appropriate inquiry when it considered whether, taking the facts in the light most favorable to the nonmoving party, the plaintiffs were employees or trainees when they completed rehire training.

B.

In <u>Walling v. Portland Terminal Co.</u>, 330 U.S. 148 (1947), the Supreme Court addressed the question whether an applicant being trained to fill a position met the definition of "employee" under the FLSA. The railroad required prospective yard brakemen to complete a training course before they could be considered for employment. <u>Id.</u> at 149. Under the close supervision of the yard crew, a trainee first observed the work of a brakeman and then was permitted to do the work. <u>Id.</u> The Court explained:

-7-

His activities do not displace any of the regular employees, who do most of the work themselves, and must stand immediately by to supervise whatever the trainees do. The applicant's work does not expedite the company business, but may, and sometimes does, actually impede and retard it. If these trainees complete their course of instruction satisfactorily and are certified as competent, their names are included in a list from which the company can draw when their services are needed. Unless they complete the training and are certified as competent, they are not placed on the list.

Id. at 149-50. The Court concluded that those who "work for their own advantage on the premises of another" are not "suffer[ed] or permit[ted] to work." Id. at 152. The Court accepted the unchallenged findings that the railroad received "no 'immediate advantage' from any work done by the trainees" and held that the applicants were not employees under the FLSA. Id. at 153. Portland Terminal has been interpreted as "focusing principally on the relative benefits of the work performed by the purported employees." Solis v. Laurelbrook Sanitarium & Sch., Inc., 642 F.3d 518, 526 (6th Cir. 2011); see id. at 528 (gathering cases that "apply a primary benefit test to determine employment status").

Portland Terminal is not meaningfully different from this case. H&R Block receives no immediate advantage from the rehire training completed by the tax professionals. As set forth above, tax professionals do not prepare tax returns or complete any other work for H&R Block's clients during the rehire training. The tax professionals do not displace any regular employees, nor does their completion of the training expedite H&R Block's business. While the CPE requirement is no doubt useful to H&R Block in that the training helps educate the tax professionals and keep them current on tax issues, H&R Block does not reap the benefits until after the tax professionals accept the company's offer of employment. Indeed, H&R Block offers courses on substantive tax topics, and tax professionals enrolled in those courses could apply the training in a job with a different tax preparation service provider.

The plaintiffs argue that H&R Block receives an immediate economic advantage because it charges twenty dollars for access to its training courses and because it holds itself out as having "the best trained and most qualified" tax preparers in the industry. The twenty-dollar fee, however, is *de minimis* and offsets the cost to H&R Block for purchasing or creating the CPE courses. Moreover, H&R Block generates no income from tax professionals who satisfy the rehire training requirement by taking courses offered by a different provider. We also find attenuated the plaintiffs' argument that "H&R Block takes advantage of the perceived value of its tax professionals' training to grow its business (*i.e.*, make more money) and justify the prices it charges clients for tax preparation services[.]" Appellants' Br. 55. These types of economic benefits—H&R Block's collection of a nominal fee and its promotion as having well-trained tax preparers—are not the type of immediate advantage Portland Terminal envisioned and do not create a genuine issue for a jury to resolve. Cf. Reich v. Parker Fire Prot. Dist., 992 F.2d 1023, 1028 (10th Cir. 1993) (finding that the fire protection district did not derive an immediate advantage from firefighter trainees where the trainees did not assume actual duties of career firefighters during training and finding nondispositive that trainees made a financial sacrifice to attend training).

Finally, the plaintiffs argue that the rehire training primarily benefits H&R Block because the skills learned are not transferable. The plaintiffs contend that they cannot apply the rehire training elsewhere because the courses refer to H&R Block's internal systems and proprietary software, because the tax professionals have entered into confidentiality agreements with H&R Block, and because their employment agreements prohibit them from soliciting or providing tax preparation services to H&R Block's clients for two years. The use of H&R Block's internal systems and software in training courses does not render the skills learned at the training courses nontransferable. See Donovan v. Am. Airlines, Inc., 686 F.2d 267, 269, 272 (5th Cir. 1982) (holding that flight attendant trainees were not employees, even though the company's training taught American's emergency procedures, American's internal

procedures, "American's practices in preparing and serving food and liquor, American's customer service practices, American's grooming requirements and, in general, American's 'style'"). Moreover, the confidentiality agreement and two-year noncompete clause do not "essentially side-line[]" the tax professionals, see Appellants' Br. 57, because the tax professionals are not prohibited from using the knowledge learned in the CPE courses or from gaining employment elsewhere. We agree with H&R Block's argument that the plaintiffs "do not need to use H&R Block's trade secrets, or solicit its customers, to use information they learned during CPE regarding tax preparation to engage in employment outside of H&R Block." Appellees' Br. 30.

We hold that the tax professionals were not employees of H&R Block when they completed rehire training. We find further support for this conclusion in the Wage and Hour Division Field Operations Handbook, wherein the Wage-Hour Administrator of the Department of Labor identified the following six criteria to aid in determining whether trainees are employees: whether the training is similar to that given in a vocational school; whether the training is for the benefit of the trainees; whether the trainees displace regular workers; whether the employer derives an immediate advantage from the activities of the trainees; whether the trainees are entitled to a job at the conclusion of the training period; and whether the employer and the trainees understand that the trainees are not entitled to wages for the time spent in training.

The plaintiffs contend that there is a genuine dispute of material fact regarding whether the trainees understood that they were not entitled to compensation for the rehire training, particularly because H&R Block did not inform them in writing that they would not be paid and because they did not acknowledge in writing that they understood that they would not be paid. This evidence, however, does not create a material factual dispute in light of the evidence that the company handbooks explained that tax professionals must complete the training to be eligible for rehire, that doing

so was not a guarantee of future employment, and that H&R Block charged twenty dollars for access to its CPE courses.

## III.

The judgment is affirmed.

_____