# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-3195
_____

Lee Michael Pederson

*Plaintiff - Appellant*

v.

Phillip Frost; OPKO Health, Inc.; Brian Keller; CoCrystal Pharma, Inc.; J. Does 1-50

*Defendants - Appellees*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: October 17, 2019
Filed: March 10, 2020
_____

Before LOKEN, SHEPHERD, and STRAS, Circuit Judges.
_____

STRAS, Circuit Judge.

Lee Pederson, a Minnesota attorney, sued several out-of-state defendants in Minnesota state court for their alleged participation in a fraudulent scheme. The defendants removed the case to federal court. Dismissal followed, once the district

court[1] concluded that the connection between the defendants and Minnesota was too tenuous to exercise personal jurisdiction. We affirm because Pederson is the only connection between Minnesota and the underlying dispute.

I.

For years, Pederson served as outside counsel to a California corporation called BioZone. When he first began representing BioZone, he was a resident of California. He later moved to Minnesota, however, and by the time of the alleged fraud, Pederson was a Minnesota attorney working out of a Minnesota office.

According to Pederson's complaint, one of BioZone's co-founders, Brian Keller, induced him to continue representing the company through repeated promises of either an in-house position or increased compensation once the company's financial picture improved. In that regard, Keller sought out potential investors, the most promising of which was Phillip Frost, CEO of OPKO Health, Inc. Rather than following through on his pledge to invest in BioZone, however, Frost and his allies "took control" of the company and began engaging in securities fraud. During this time, Keller and Frost manipulated Pederson into continuing his work through more false promises. Pederson eventually discovered the fraud and quit.

Nearly all of these events occurred outside Minnesota. The meetings between Pederson, Keller, Frost, and others took place in Florida and New Jersey. Although Pederson alleges that he received "hundreds of telephone and email contacts" related

---

[1]The Honorable Wilhelmina M. Wright, United States District Judge for the District of Minnesota, adopting the report and recommendation of The Honorable Becky R. Thorson, United States Magistrate Judge for the District of Minnesota.

to BioZone in his Minnesota office, there is no allegation that any of the defendants ever resided or set foot in Minnesota.[2]

Even so, Pederson filed a lawsuit against the defendants in Minnesota state court for common-law fraud and tortious interference with prospective economic advantage to recover for the various losses that he allegedly suffered. The defendants removed the case to federal court and immediately filed a motion to dismiss for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). The district court, adopting the magistrate judge's report and recommendation, granted the motion.

II.

On appeal, we review the dismissal based on an absence of personal jurisdiction de novo. *See Johnson v. Arden*, 614 F.3d 785, 793 (8th Cir. 2010). Just like the district court, we may look beyond the pleadings to determine whether personal jurisdiction exists, including reviewing affidavits and other exhibits.[3] *See K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011). Although the pool of relevant documents that we may consider is larger than for a motion to dismiss for failure to state a claim, we must still view the facts "in the light most favorable to" Pederson, at least when, as here, the district court has not held an evidentiary hearing to resolve disputed facts. *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 646–47 (8th Cir. 2003); *see also Dever v. Hentzen Coatings, Inc.*, 380 F.3d

---

[2]Keller is a California resident, Frost is a Florida resident, and OPKO is incorporated in Delaware and headquartered in Florida. CoCrystal Pharma, Inc., which became BioZone's legal successor after a merger, is incorporated in Delaware and headquartered in Georgia.

[3]Pederson is attempting to add more to the record by judicial notice in two motions that he has filed. We deny both of them. *See Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (stating that "we *may* take judicial notice" of certain public records on appeal (emphasis added)).

1070, 1073 (8th Cir. 2004) (explaining when "affidavits, testimony, or documents" are required to establish personal jurisdiction over a defendant).

The focus of the inquiry is on the defendants, and to ensure that personal jurisdiction exists, a federal district court must satisfy itself that hearing the case is consistent with both the law of the forum state and due process. *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)); *see also* U.S. Const. amend. V. Here, Minnesota's long-arm statute authorizes courts to exercise jurisdiction to the full extent of the Due Process Clause, *see Rilley v. MoneyMutual, LLC*, 884 N.W.2d 321, 327 (Minn. 2016), so the two-part inquiry is merged into a single question: would requiring the defendants to litigate this case in Minnesota offend due process? *Dever*, 380 F.3d at 1073. The answer, at least here, is yes.

At this stage, Pederson's only theory is that the defendants have sufficient "suit-related" contacts to "create a substantial connection with" Minnesota. *Walden*, 571 U.S. at 284. This theory is called specific jurisdiction, and to evaluate whether their contacts are sufficient, five factors are relevant:

> (1) the nature and quality of the [defendant's] contacts with the forum state; (2) the quantity of the [defendant's] contacts; (3) the relationship of the cause of action to the [defendant's] contacts; (4) the interest of [the forum state] in providing a forum for its residents; and (5) the convenience or inconvenience to the parties.

*Johnson*, 614 F.3d at 794.

The first three contact-based factors weigh heavily against the exercise of personal jurisdiction. Nowhere does Pederson allege that any of the defendants ever visited Minnesota, had any suit-related business there, or otherwise "purposely availed" themselves of the state's "benefits and protections." *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 594 (8th Cir. 2011) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985)). In terms of physical presence, the best he can do is his vague assertion that CoCrystal has

"transacted business within" Minnesota and that OPKO operates in the state through a subsidiary, but nothing suggests that these activities are related to his lawsuit. In fact, Pederson admits that the parties' meetings occurred elsewhere.

Pederson fares better when it comes to telephonic and virtual contacts, but not well enough to show that the defendants purposely availed themselves of Minnesota's "benefits and protections." *Id.* The complaint alleges that Pederson received hundreds of phone calls and emails related to BioZone in his Minnesota office, including one from Frost and many more from Keller. There is no allegation, however, that these communications were part of some broader effort by the defendants to create a connection with Minnesota. *See Whaley v. Esebag*, 946 F.3d 447, 452 (8th Cir. 2020) (involving in-person meetings and a desire "to establish" a relationship with the plaintiffs because of their "possible connections" to a large corporation in the forum state); *see also Rilley*, 884 N.W.2d at 329 (holding that an email solicitation of "over 1,000 loan applicants with known Minnesota addresses" deliberately targeted Minnesota as a forum).

To be sure, "calls, emails, and text messages" directed at a plaintiff can be relevant contacts. *Whaley*, 946 F.3d at 452. But when the only connection between the defendants and the forum state is the plaintiff himself, they are not enough on their own. *See Walden*, 571 U.S. at 286 (explaining that contacts are insufficient unless they reflect the defendants' "own affiliation with" the forum state); *Viasystems, Inc.*, 646 F.3d at 594 (holding that "scattered e-mails, phone calls, and a wire-transfer of money" do not, without more, create a "deliberate and substantial connection" with the forum state (internal quotation marks and citation omitted)). Because Pederson just happens to work and maintain an office in Minnesota, these contacts fit into the "random, fortuitous, or attenuated" category. *Walden*, 571 U.S. at 285–86 ("[T]he plaintiff cannot be the only link between the defendant and the forum.").

Pederson also believes that just because an intentional tort allegedly caused him to suffer harm in Minnesota—including damaged business relationships,

reputational injuries, unpaid attorney fees, and emotional distress—it is the right place to litigate this case. For support, he relies on *Calder v. Jones*, which held that personal jurisdiction can exist over a nonresident defendant who commits an intentional tort when its effect is "felt" primarily within the forum state. 465 U.S. 783, 790 (1984). As we recently recognized, however, *Calder* has two interrelated limitations. First, the relationship must arise out of contacts that the defendant has created with the forum state. *Whaley*, 946 F.3d at 451. Second, it is "the defendant's contacts and conduct with the forum state *itself*" that are the focus, "not the defendant's contacts" with people who happen to reside there. *Id.*

Both limitations are in play here because these defendants have done nothing to "tether[]" the effect of their actions to Minnesota. *Walden*, 571 U.S. at 290. As the Supreme Court put it, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* In the end, all we have here is Pederson himself, and "however significant [his] contacts with the forum may be, [they] cannot be decisive in determining whether the defendant[s'] due process rights are violated."[4] *Id.* at 285 (internal quotation marks and citation omitted).

III.

We accordingly affirm the judgment of the district court.

_____

_____

[4]Given our conclusion that the defendants do not have sufficient minimum contacts with Minnesota, the last two factors—the forum state's interest and the convenience of the parties—cannot themselves create personal jurisdiction. *See Burger King*, 471 U.S. at 476 (explaining that a court considers these factors "[o]nce it has been decided that a defendant purposefully established minimum contacts within the forum State"); *accord Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 824 (8th Cir. 2014) (holding that the forum state's interest and the convenience to the parties cannot overcome an "absence of minimum contacts" (citation omitted)).