# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-2954

_____

Morningside Church, Inc.; Morningside Church Productions, Inc.; Jim Bakker

*Plaintiffs - Appellants*

v.

Leslie Rutledge, Attorney General for the State of Arkansas; Kimberly R. H. Lewis, District Attorney for the County of Merced, California; Tori Verber Salazar, District Attorney for the County of San Joaquin, California; Mike Feuer, City Attorney for the City of Los Angeles, California

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Missouri - Joplin

_____

Submitted: June 17, 2021
Filed: August 12, 2021

_____

Before LOKEN, KELLY, and ERICKSON, Circuit Judges.

_____

KELLY, Circuit Judge.

The plaintiffs here sued several out-of-state defendants in Missouri federal court, alleging that the defendants, while acting in their official capacities, violated

their First, Fifth, and Fourteenth Amendment rights.  The district court[1] dismissed the case for lack of personal jurisdiction, and the plaintiffs appeal.  We affirm.

I.

Jim Bakker is a televangelist and the lead pastor of Morningside Church.  In coordination with Morningside Church and Morningside Church Productions (collectively, Morningside), Bakker hosts the Jim Bakker Show, a nationally broadcast television program that airs Morningside Church services.  Bakker is a resident of Stone County, Missouri, and Morningside Church and Morningside Church Productions are both headquartered in Stone County.

In February 2020, as the Covid-19 pandemic was beginning in the United States, Bakker and Morningside began advertising a product called Silver Solution on the Jim Bakker Show.  During broadcasts, Bakker and his guests allegedly claimed that Silver Solution "has been proven by the government that it has the ability to kill every pathogen it has ever been tested on"; that it "has been tested on other strains of the coronavirus and has been able to eliminate it within 12 hours"; and that it is "patented, it works, we have tested it, it works on just about everything."  Bakker explains that he sees "[e]ducating" viewers about Silver Solution and offering the product for sale as "an expression of [his and his church's] religious beliefs" and "an important religious practice of itself."

The claims about Silver Solution by Bakker and his guests soon drew scrutiny from law enforcement and regulatory bodies nationwide.  On March 11, 2020, Mike Feuer, the Los Angeles City Attorney, sent a letter by email and by physical mail to the Stone County offices of the Jim Bakker Show expressing concern about how

---

[1]The Honorable M. Douglas Harpool, United States District Judge for the Western District of Missouri.

Silver Solution was being marketed to California consumers. Citing California's false advertising law, Feuer requested business records to substantiate a number of claims about Silver Solution made on the air. He explained that the letter "serve[d] as a formal demand" and that "[f]ailure to adequately substantiate the claims listed . . . may result in further action."

Leslie Rutledge, the Attorney General for the State of Arkansas, was also troubled by the Silver Solution broadcasts and launched an investigation into whether Bakker and Morningside had violated Arkansas's deceptive trade practices law. On March 24, 2020, a representative from Rutledge's office sent a civil investigative demand to Bakker's address in Stone County. Rutledge requested information on the sale and marketing of Silver Solution to Arkansas consumers; records of complaints and investigations concerning Silver Solution; and a list of Bakker's social media accounts. In an accompanying letter, she explained that failure to comply with the demand could result in Rutledge "petitioning a circuit court for an order compelling . . . compliance, or other such relief as permitted by law," including suspension of Bakker and Morningside's business in Arkansas.

Around May 4, 2020, Bakker and Morningside heard from a third law enforcement agency: the District Attorney's Office for the County of Merced, California, led by Kimberly Lewis. Lewis's office served a subpoena on a registered agent of Morningside Church Productions in California, alleging that it had reason to believe that Morningside had violated California's Business and Professions Code. The subpoena commanded the company to produce documents regarding the sale and marketing of Silver Solution to California consumers; the basis of claims about Silver Solution made on the Jim Bakker Show and related websites; and the company's communications with other entities that sold Silver Solution. The subpoena explained: "For failure to comply with this subpoena, you will be liable to the proceedings and penalties provided by law."

According to Maricela Woodall, the president of Morningside Church Productions, the company's counsel responded to Lewis's subpoena by calling her office. On this call, someone from Lewis's office allegedly said that the subpoena had been issued "in conjunction with a joint investigation by Lewis, Feuer, and Teri [sic] Verber Salazar, the District Attorney for the County of San Joaquin, California" and that all three offices would need to be involved in any discussion of that investigation. On May 28, 2020, Morningside's counsel had a conference call with Lewis's, Feuer's, and Salazar's offices in which Morningside sought to limit the scope of the subpoena; in Woodall's account, Lewis, Feuer, and Salazar "indicated that they would not agree to unilaterally limit the scope of the Subpoena in a way that satisfie[d] [Morningside's] Constitutional concerns."

That same month, Morningside's counsel also had a phone call with Rutledge's office, during which a representative allegedly agreed to limit the scope of the March 24 demand. The following day, Bakker and Morningside emailed a response to the demand that provided some of the information sought but objected to many of the requests. Woodall claims that this response "complied with the [demand] as limited by the agreement." On May 27, 2020, the Attorney General's Office sent Morningside and Bakker an email rejecting their objections. The office again requested the information originally identified in the demand and wrote, "If the responses are not fully received by June 12, 2020, the State will have no choice but to file a petition requesting a court order requiring Morningside and Pastor Bakker to fully answer the [demand] and an injunction against Morningside and Pastor Bakker from conducting business in Arkansas."

Bakker and Morningside did not respond to the communications from May 27 and 28. Instead, on June 5, 2020, they filed suit against Feuer, Lewis, Rutledge, and Salazar (the defendants) in the Western District of Missouri. Bakker and Morningside allege that the defendants' investigations into Silver Solution violate their constitutional rights and that the state statutes the defendants have acted under

-4-

are unconstitutional. Laying out the basis for federal jurisdiction, the complaint states:

> A substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, in Stone County, Missouri, including, *inter alia*, the subpoena and investigative demands at issue (a) relate to the purported conduct of Plaintiffs in Stone County, Missouri, (b) were served or delivered to one or more Plaintiffs in Stone County, Missouri, (c) purport to compel conduct of Plaintiffs in Stone County, Missouri, and (d) seek documents, writings, communications, and electronically stored information and data that are situated in Stone County, Missouri.

In response to this complaint, the defendants moved to dismiss the case for lack of personal jurisdiction.[2] The district court granted their motion, and Bakker and Morningside now appeal.

## II.

We review the district court's decision on personal jurisdiction de novo. Pederson v. Frost, 951 F.3d 977, 979 (8th Cir. 2020). "The plaintiffs bear the burden of establishing a prima facie showing of jurisdiction, and we view the evidence in the light most favorable to the plaintiffs." Whaley v. Esebag, 946 F.3d 447, 451 (8th Cir. 2020).

Because Bakker and Morningside acknowledge that the defendants are not subject to general personal jurisdiction in Missouri, the issue here is whether the

---

[2]On June 16, 2020, the same day she filed her motion to dismiss in federal court, Rutledge also filed a complaint in Arkansas state court against Bakker, Morningside, and others, alleging violations of the Arkansas Deceptive Trade Practices Act.

district court had specific personal jurisdiction. "A district court may exercise specific jurisdiction over an out-of-state defendant only to the extent permitted by the state's long-arm statute and the Constitution's due process clause." Federated Mut. Ins. Co. v. FedNat Holding Co., 928 F.3d 718, 720 (8th Cir. 2019). For the purposes of this appeal, we will assume that the defendants fell under Missouri's long-arm statute by "commi[tting] a tortious act within" the state. Mo. Rev. Stat. § 506.500.1(3). "Our task, then, is to determine whether the exercise of personal jurisdiction comports with due process." Henry Law Firm v. Cuker Interactive, LLC, 950 F.3d 528, 532 (8th Cir. 2020); see also Eagle Tech. v. Expander Ams., Inc., 783 F.3d 1131, 1136 (8th Cir. 2015) ("Because the Missouri long-arm statute authorizes the exercise of jurisdiction over non-residents to the extent permissible under the due process clause, we turn immediately to the question whether the assertion of personal jurisdiction would violate the due process clause." (quoting Romak USA, Inc. v. Rich, 384 F.3d 979, 984 (8th Cir. 2004) (cleaned up)).

"Due process requires that a defendant have certain 'minimum contacts' with the forum State for the State to exercise specific jurisdiction." Creative Calling Sols., Inc. v. LF Beauty Ltd., 799 F.3d 975, 980 (8th Cir. 2015). The defendant's connection with the forum state must "be more than random, fortuitous, or attenuated, and must permit the defendant to reasonably anticipate being haled into court there." Id. (cleaned up). The contacts therefore have to be based on "some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Federated Mut., 928 F.3d at 720 (quoting Fastpath, Inc. v. Arbela Techs. Corp., 760 F.3d 816, 821 (8th Cir. 2014)). In this circuit, we apply a "five-factor test for assessing the sufficiency of a defendant's contacts," considering: "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) [the] convenience of the parties." Id. (cleaned up). The first

three factors are "of primary importance," while the fourth and fifth factors "carry less weight." Whaley, 946 F.3d at 452 (cleaned up).

Because Bakker and Morningside's "claims sound in intentional tort," we evaluate specific jurisdiction by reference to the "effects test" first set forth in Calder v. Jones, 465 U.S. 783 (1984), and later clarified in Walden v. Fiore, 571 U.S. 277 (2014). Whaley, 946 F.3d at 451. In Calder, the Supreme Court "held that personal jurisdiction can exist over a nonresident defendant who commits an intentional tort when its effect is felt primarily within the forum state." Pederson, 951 F.3d at 981 (cleaned up). But more recently, in Walden, the Court made clear that the effects test is subject to two "interrelated limitations." Id. First, the defendant's relationship with the forum state "must arise out of contacts that the defendant himself created with the forum state. Second, we look to the defendant's contacts with the forum state *itself*, not the defendant's contacts with persons who reside there." Whaley, 946 F.3d at 451 (cleaned up). As the Court explained, the "proper question" for personal jurisdiction "is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." Walden, 571 U.S. at 290. "[T]he plaintiff cannot be the only link between the defendant and the forum." Id. at 285; see also id. at 290 ("Calder made clear that mere injury to a forum resident is not a sufficient connection to the forum.").

Bakker and Morningside do not allege "that any of the defendants ever visited [Missouri], had any suit-related business there, or otherwise purposefully availed themselves of the state's benefits and protections." Pederson, 951 F.3d at 980 (cleaned up). Rather, their argument for personal jurisdiction is based on the letters and phone calls the defendants directed toward them in Missouri requesting that they produce information. "To be sure, calls, emails, and text messages directed at a plaintiff can be relevant contacts. But when the only connection between the defendants and the forum state is the plaintiff himself, they are not enough on their own." Id. (cleaned up). The same is true of physical letters. See Federated Mut., 928

-7-

F.3d at 721 ("[D]irecting a few emails or letters to Federated Mutual in Minnesota is not enough to establish personal jurisdiction there."). In Pederson v. Frost, 951 F.3d 977, for example, we held that a federal court in Minnesota did not have personal jurisdiction over out-of-state defendants who sent "hundreds of telephone and email contacts" to the plaintiff at his Minnesota office. Id. at 979. Because there was no indication "that these communications were part of some broader effort by the defendants to create a connection with Minnesota" and no evidence of any additional contacts with the state, we concluded that they were insufficient to establish the minimum contacts necessary under the Due Process Clause. Id. at 980.

Here, the defendants' isolated letters and calls represent their only contacts with the forum state. These communications were directed at Missouri simply because Bakker and Morningside "just happen[ed]" to reside there, id.—had they been in California or Iowa, the defendants would have reached out to them in those states instead. Because Bakker and Morningside are "the only link between the defendant[s] and the forum," Walden, 571 U.S. at 285, the defendants' Missouri-directed communications "fit into the 'random, fortuitous, or attenuated' category," Pederson, 951 F.3d at 980. Accordingly, the first factors we consider—the nature and the quality of the defendants' contacts with Missouri, as well as the quantity of those contacts—weigh heavily against personal jurisdiction. Cf. Pederson, 951 F.3d at 980.

Bakker and Morningside argue that jurisdiction is nonetheless appropriate because the alleged tort—the constitutional deprivation they claim to have suffered when the defendants requested information about sales of Silver Solution—occurred in Missouri, where they received the defendants' letters and calls. This argument seems to be directed to the third factor of our test: the relationship between the defendants' contacts with the forum state and the cause of action. But in Pederson, where we held that the first three factors all weighed against jurisdiction, see id., the alleged tort was committed in the same way. There, the defendants were accused of committing fraud via communications they sent to the plaintiff in Minnesota, which

is where he received and relied on the defendants' representations. See id. at 979. Though the plaintiff experienced the alleged tort in Minnesota, we concluded that the state did not have personal jurisdiction over the defendants because they did "nothing to tether the effect of their actions to Minnesota." Id. at 981 (cleaned up). As we explained, "it is the defendant's contacts and conduct with the forum state *itself* that are the focus, not the defendant's contacts with people who happen to reside there." Id. (cleaned up); cf. Eagle Tech., 783 F.3d at 1136–37 (concluding that no personal jurisdiction existed in a quantum meruit suit even though the defendant allegedly terminated the contract through a letter sent to the plaintiff in the forum state); Walden, 571 U.S. at 287–88 (explaining that personal jurisdiction existed in Calder because there the "effects caused by the defendants' article—*i.e.*, the injury to the plaintiff's reputation in the estimation of the California public—connected the defendants' conduct to *California*, not just to a plaintiff who lived there" (cleaned up)). Finding nothing to distinguish this case from Pederson, we are not persuaded by Bakker and Morningside's argument and conclude that the third factor also disfavors personal jurisdiction. Cf. Whaley, 946 F.3d at 453 (holding that the third factor supported personal jurisdiction where the defendant's "actions in and affecting *Arkansas*," rather than the plaintiffs themselves, were "central to the plaintiffs' allegations of fraud and misrepresentation" (emphasis added)).

"The less important fourth and fifth factors offset each other": while Missouri has an interest in establishing a forum for its residents, that forum is an inconvenient one for the defendants, who are not from Missouri and have no business in the state. Whaley, 946 F.3d at 453. Considering all five factors together, we conclude that Bakker and Morningside have not demonstrated that the defendants' "conduct connects [them] to the forum in a meaningful way." Walden, 571 U.S. at 290. Accordingly, the district court properly determined that it lacked personal jurisdiction over the defendants under the Due Process Clause.

## III.

We affirm the judgment of the district court.[3]

———————————————————

[3]Because the district court did not have jurisdiction in the first place, we do not reach the parties' additional arguments on whether it should have abstained from exercising its jurisdiction.