# United States Court of Appeals

### For the Eighth Circuit

_____

No. 20-2874

_____

Joyce Vallone, individually and on behalf of all others similarly situated; Erasmus Ikogor, individually and on behalf of all others similarly situated,

*Plaintiffs - Appellants*,

v.

CJS Solutions Group, LLC, doing business as HCI Group,

*Defendant - Appellee*.

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: May 11, 2021
Filed: August 18, 2021

_____

Before COLLOTON, WOLLMAN, and KOBES, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Joyce Vallone and Erasmus Ikogor sued CJS Solutions Group, LLC, a Florida entity doing business as The HCI Group, in the District of Minnesota. They moved to certify a collective action under the Fair Labor Standards Act. The putative class of plaintiffs was composed of all HCI employees hired on a per-project basis who

were not paid wages for out-of-town travel to and from remote project locations. The district court[1] conditionally certified a collective action limited to claims arising out of travel to and from Minnesota. On the merits, however, the court granted summary judgment for HCI on the ground that Vallone and Ikogor were not employees when traveling. Vallone and Ikogor appeal, and we affirm the judgment.

I.

HCI is a Florida company that offers training services on medical recordkeeping software to hospitals and clinics. To train personnel on the use of new software, HCI arranges so-called "go live" events that last several weeks. HCI hires consultants experienced with the software on a per-project basis to work alongside medical personnel and assist with training.

The principal dispute is whether these consultants are entitled to wages for time spent traveling to and from the "go live" events. When HCI sends an offer letter to a prospective consultant, the company specifies the project's location and either arranges for travel or agrees to reimburse for travel expenses. As a project progresses, HCI will "cut" unneeded consultants and arrange for their departing travel to a chosen destination. HCI does not pay consultants hired on a per-project basis for time spent traveling.

In 2017 and 2018, Ikogor, a Florida resident, worked on ten HCI "go live" projects in the United States, three of which were in Minnesota. Vallone, a New York resident, worked at one event in Minnesota. Each "go live" event in Minnesota took place at the Mayo Clinic in Rochester.

---

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

Before traveling, Vallone and Ikogor filled out tax paperwork, submitted immunization forms, and reviewed basic hospital policies. Neither consultant engaged in any tasks for HCI while in transit to or from Rochester, and neither received compensation for time spent while traveling.

Vallone and Ikogor sued HCI in the District of Minnesota, seeking wages under the Fair Labor Standards Act for time spent traveling. They moved to certify a collective action on behalf of employees who traveled to any HCI projects. HCI argued that the court lacked personal jurisdiction over claims with no connection to Minnesota. The court agreed, and limited the action to employees "who engaged in out-of-town travel to or from a Minnesota jobsite for HCI or who resided in Minnesota."

The court later granted summary judgment for HCI. The court reasoned that Vallone and Ikogor were not employees at the time of travel: they were not required to perform any duties for HCI until the day the project commenced, and the employment ended when they were cut from the project.

II.

Vallone and Ikogor first argue that the district court erred in limiting the scope of the action. They dispute the court's conclusion that it could exercise personal jurisdiction over HCI only with respect to wage claims based on "travel to or from a Minnesota jobsite for HCI" and claims of those "who resided in Minnesota." The appellants argue that HCI waived any defense based on personal jurisdiction, and alternatively, that the court erred in limiting the claims. We review the court's decision on personal jurisdiction *de novo*. *See E. Coast Test Prep LLC v. Allnurses.com, Inc.*, 971 F.3d 747, 755 (8th Cir. 2020).

The requirement of personal jurisdiction represents "an individual liberty interest" that derives "from the Due Process Clause." *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). A court may enter judgment against a defendant like HCI only if the company has minimum contacts with the forum. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011). A defendant waives the requirement of personal jurisdiction, however, if it fails to raise the defense in its first pre-answer motion or, if no motion is filed, in its answer. *See* Fed. R. Civ. P. 12(h)(1).

Appellants' complaint sought certification of collective actions covering all HCI employees for all of their travel time to HCI projects anywhere in the United States. HCI's answer asserted that certification of such an action "would constitute a denial of [HCI's] Due Process rights." Vallone and Ikogor argue that this answer was not clear enough to raise a defense based on personal jurisdiction. The district court disagreed, reasoning that HCI's answer was "inartful," but did not waive the defense.

We conclude that there was no waiver. A defendant is not required to "plead every step of legal reasoning," but it must "state in short and plain terms its defenses." *Wisland v. Admiral Beverage Corp.*, 119 F.3d 733, 737 (8th Cir. 1997). Unlike in *Alger v. Hayes*, 452 F.2d 841 (8th Cir. 1972), where the defendant's answer and subsequent filings were ambiguous about whether the defendant challenged personal or subject-matter jurisdiction, *id*. at 843-44, HCI's answer pointed to the correct source of law for a personal jurisdiction defense (the Due Process Clause), and HCI addressed personal jurisdiction at length in its resistance to certification. The reference to due process in the context of certification of a nationwide collective action was sufficient to give the plaintiffs reasonable notice of the potential defense. That the answer did not use the phrase "personal jurisdiction" does not show waiver. *Cf. Barnwell & Hays, Inc. v. Sloan*, 564 F.2d 254, 255-56 (8th Cir. 1977) (per curiam).

Vallone and Ikogor next argue that the court erred in concluding that non-Minnesota residents of the collective action could not also recover compensation for their non-Minnesota travel time. They do not dispute that the district court must have personal jurisdiction over all claims in a collective action, Appellants' Br. 21 n.6, so we take that proposition as a given, and consider only whether the district court had personal jurisdiction over the claims at issue.

The Fair Labor Standards Act does not provide for nationwide service of process, so we first look to the forum State's long-arm statute. Fed. R. Civ. P. 4(k)(1)(A); *see Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 108 (1987). Minnesota's long-arm statute extends jurisdiction as far as permitted by the Due Process Clause. *See* Minn. Stat. § 543.19; *Pederson v. Frost*, 951 F.3d 977, 980 (8th Cir. 2020). HCI is a Florida company headquartered in Florida, so the court could exercise jurisdiction only if there was "a connection between the forum and the specific claims at issue." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1781 (2017). To justify an exercise of personal jurisdiction, the claims must "arise out of or relate to the defendant's contacts with the forum," and there must be an "activity or an occurrence that takes place in the forum State." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025-26 (2021) (internal quotations and emphasis omitted).

Vallone and Ikogor assert that because the court had personal jurisdiction over one set of claims that arose based on travel to Minnesota, the court could exercise jurisdiction over *all* travel-time claims against HCI. Each failure to pay wages, however, is a separate violation that gives rise to a distinct claim. *See Stone v. Troy Constr., LLC*, 935 F.3d 141, 154 (3d Cir. 2019). Personal jurisdiction must be determined on a claim-by-claim basis. *See Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274-75 (5th Cir. 2006); *Phillips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 289 (1st Cir. 1999). "In order for a court to exercise specific jurisdiction *over a claim*," there must be an "affiliation between the forum and the

underlying controversy"—"unconnected activities" do not establish jurisdiction. *Bristol-Myers Squibb*, 137 S. Ct. at 1781 (emphasis added) (internal quotation omitted).

The appellants rely on *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984), where the Court held that a district court could entertain a request for nationwide damages in a libel case where personal jurisdiction over the defendant was premised on the defendant's circulation of a magazine in the forum State. *Id.* at 781. But *Keeton* "concerned jurisdiction to determine *the scope of a claim* involving in-state injury and injury to residents of the State, not, as in this case, jurisdiction to entertain claims involving no in-state injury and no injury to residents of the forum State." *Bristol-Myers Squibb*, 137 S. Ct. at 1782. *Keeton* does not mean that jurisdiction to entertain a claim with connections to Minnesota establishes jurisdiction to hear another claim with no such connection. The court properly excluded claims with no connection to Minnesota.

III.

On the merits, the appellants argue that their out-of-town travel to HCI projects is compensable under the Fair Labor Standards Act. The district court concluded that Vallone and Ikogor were not employees when traveling, so HCI had no obligation to pay for their time. We review the court's decision *de novo*. *See Petroski v. H & R Block Enters., LLC*, 750 F.3d 976, 978 (8th Cir. 2014).

The Fair Labor Standards Act requires employers to pay employees minimum wage and overtime. 29 U.S.C. §§ 206-207. The Act defines "employee" as "any individual employed by an employer," and defines "employ" as "to suffer or permit to work." *Id.* § 203(e)(1), (g). The test of employment is one of economic reality. If the parties' agreement does not contemplate compensation, and the alleged employer received "no immediate advantage" from the activity, then there is no

-6-

employment relationship. *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 300 (1985) (quoting *Walling v. Portland Terminal Co.*, 330 U.S. 148, 153 (1947)). An employment relationship requires some activity "pursued necessarily and primarily for the benefit of the employer." *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1361 (8th Cir. 1993) (quoting *Tenn. Coal, Iron & R.R. Co. v. Muscoda Loc. No. 123*, 321 U.S. 590, 598 (1944)). In assessing the relationship, we consider "the circumstances of the whole activity." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947).

Vallone and Ikogor contend that although HCI hired them to train medical personnel on a per-project basis, they were employed not only while conducting training in Minnesota, but also while traveling to and from the Mayo Clinic. The district court rejected this contention, concluding that Vallone and Ikogor were employed for one job at a time, and had no duties to HCI when traveling.

Vallone and Ikogor argue that they were "hired" before they traveled, because they signed contingent offers for at-will employment. Each offer letter, however, stated that it was not "a contract for employment" and did not "guarantee employment of any duration." The acceptance of such an offer does not establish an employment relationship under the Act, because HCI had yet to suffer or permit any work. *See Dellinger v. Sci. Applications Int'l Corp.*, 649 F.3d 226, 228-31 (4th Cir. 2011); *cf. Liscomb v. Boyce*, 954 F.3d 1151, 1154-55 (8th Cir. 2020). At this stage, Vallone and Ikogor were merely "prospective employees." *See Dellinger*, 649 F.3d at 230.

Vallone and Ikogor also urge that their travel was "for the primary benefit of HCI," so they became employees when they began traveling. Yet "many activities that benefit employers are not considered employment." *ConAgra*, 987 F.2d at 1361. During travel, Vallone and Ikogor did not train any medical personnel or complete any other work. Their travel did not "displace any regular employees," and it did not expedite HCI's business. *Petroski*, 750 F.3d at 981. HCI did not "reap the benefits"

of travel until employees began training medical personnel at the Mayo Clinic, so travel did not itself confer an employment relationship. *Id.*

The appellants' employment ended when they were cut from the Mayo Clinic projects before their departing travel. Vallone and Ikogor were free to "engage in other employment" after the projects, and HCI imposed no requirement that Vallone or Ikogor work on a future project for HCI. *Id.* at 980. That they worked several projects for HCI is insufficient on its own to establish that their employment status continued through their departing travel or from one project to the next. *See id.* at 979-80.

\* \* \*

The judgment of the district court is affirmed.

_____