Filed 10/10/24  Hamilton v. Vail Corp. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| CHRISTOPHER HAMILTON et al., | C095844 |
| Plaintiffs and Respondents, | (Super. Ct. No. SC20210148) |
| v. | |
| VAIL CORPORATION et al., | |
| Defendants and Respondents; | |
| RANDY DEAN QUINT et al. | |
| Movants and Appellants. | |
| CHRISTOPHER HAMILTON et al., | C097604 |
| Plaintiffs and Respondents, | (Super. Ct. No. SC20210148) |
| v. | |
| VAIL CORPORATION et al., | |
| Defendants and Respondents; | |
| JOHN LINN et al., | |
| Appellants. | |

1

Vail Resorts, Inc., The Vail Corporation (doing business as Vail Resorts Management Company), and Heavenly Valley, Limited Partnership (Heavenly) are all related companies that together own and operate mountain resorts. Starting in 2020, several current and former employees in Colorado (Colorado Plaintiffs) and in California (California Plaintiffs) sued one or more of these entities for alleged labor law violations. California Plaintiffs filed five separate suits in California, including this one. Colorado Plaintiffs filed one suit in Colorado. Most of these suits raised putative class action claims and some also raised putative collective action claims under the Fair Labor Standards Act of 1938 (FLSA; 29 U.S.C. § 201 et seq.).

This appeal concerns a settlement in one of these cases. California Plaintiffs entered into a settlement agreement with The Vail Corporation and Heavenly (together, defendants) that, if approved, would extinguish the claims of current and former employees nationwide, including Colorado Plaintiffs. Colorado Plaintiffs moved to intervene in this case shortly after, when California Plaintiffs said they would ask the trial court overseeing this case to approve their proposed settlement. The trial court denied the motion to intervene and, over Colorado Plaintiffs' objection, entered judgment approving the settlement.

On appeal, Colorado Plaintiffs raise various issues. Among other things, they argue that the trial court wrongly denied their motion to intervene, lacked jurisdiction to consider the settlement, improperly presumed the settlement was fair, and wrongly certified the class action. We agree the trial court should have granted their motion to intervene and improperly presumed the proposed settlement was fair. For those reasons, we will reverse the order denying intervention and direct the trial court to vacate its judgment approving the settlement.

BACKGROUND

I

*California Plaintiffs' and Colorado Plaintiffs' Suits*

California Plaintiffs—Anna Gibson, Zachariah Saiz-Hawes, William Berrier, Matthew Allen, Adam Heggen, Paul Greg Roberds, and Christopher Hamilton—and Colorado Plaintiffs—Randy Dean Quint, John Linn, and Mark Molina—all alleged employment claims against Vail Resorts, The Vail Corporation, Heavenly, or some combination of the three.

Heggen filed the first suit (the Heggen action). In October 2020, he filed a putative class action complaint against Heavenly in California state court, seeking to represent a California class of current and former employees. Apart from raising proposed class action claims, he also alleged a claim under the Labor Code Private Attorneys General Act of 2004 (PAGA; Lab. Code, § 2698 et seq.)—a law that authorizes employees who have been the subject of certain Labor Code violations to file representative actions on behalf of themselves and other aggrieved employees. (Lab. Code, § 2699.)

Colorado Plaintiffs filed their own suit two months later in federal court in Colorado (the Colorado action). They filed a putative FLSA collective and class action complaint against Vail Resorts that was nationwide in scope. They alleged that Vail Resorts violated the FLSA—a federal law establishing minimum wage, overtime pay, and other requirements (29 U.S.C. §§ 206, 207) and giving employees the right to bring a private cause of action on their own behalf and on behalf of other similarly situated employees (29 U.S.C. § 216(b)). They further alleged that Vail Resorts violated the labor laws of nine states in which it operates—namely, Colorado, California, Utah, Minnesota, Wisconsin, Washington, New York, Vermont, and Michigan.

Gibson, Saiz-Hawes, Hamilton, and Roberds filed their own suits in the following months. Gibson and Saiz-Hawes filed a putative FLSA collective and class action complaint against The Vail Corporation in California state court (the Gibson action). They also alleged in their complaint a claim under PAGA. Roberds filed a putative class action complaint against The Vail Corporation and Heavenly in California state court (the Roberds action). And Hamilton filed two complaints, both against Heavenly in California state court. He first filed a putative class action complaint (the Hamilton I action), and he later filed a complaint alleging a PAGA cause of action (the Hamilton II action).

All the actions filed in California, apart from the Hamilton II action, were eventually removed to federal court. Defendants moved to remove the Gibson action based on the existence of a federal question (28 U.S.C. §§ 1331, 1441) and the other actions based on the Class Action Fairness Act of 2005 (Pub.L. No. 109-2 (Feb. 18, 2005) 119 Stat. 4).

II

*Proposed Settlement and Motion to Intervene*

Before the last of these complaints against defendants were filed, defendants, Heggen, Gibson, and Saiz-Hawes reached an agreement on material settlement terms following a mediation. Vail Resorts afterward moved to stay the Colorado action, asserting that the settlement, if approved, would be nationwide in scope and resolve and release all outstanding claims raised in the Colorado action. Hamilton, Roberds, Berrier, and Allen later joined the settlement.

In October 2021, defendants, Gibson, and Saiz-Hawes told the federal court overseeing the Gibson action that they had finalized their agreement. They also revealed where they planned to file their proposed settlement. Although in earlier filings they indicated they would file the settlement with the court overseeing the Gibson action, they

4

now said they would instead file the settlement with the court overseeing the Hamilton II action—the one action, again, that ultimately remained in California state court.

Three weeks later, Colorado Plaintiffs moved to intervene in the Hamilton II action (i.e., this action), arguing they were entitled to intervene as of right (mandatory intervention) or at least should be allowed to intervene as a matter of discretion (permissive intervention). Focusing on mandatory intervention, they asserted that their motion was timely, that they had an interest in this action, and that disposition of this action may impair their interest because the trial court's approval of the planned settlement would extinguish their claims. They also asserted that California Plaintiffs did not adequately represent their interest. They reasoned that California Plaintiffs had a significant incentive to settle to overcome potential personal jurisdiction issues, noting that while California Plaintiffs sought to represent individuals nationwide, California courts would not have personal jurisdiction over the claims of out-of-state individuals. Colorado Plaintiffs added that should they be allowed to intervene, they would move to dismiss this action under the first-filed rule.

The trial court denied the motion. Starting with mandatory intervention, it found Colorado Plaintiffs could not meet their burden to show that their interest may be impaired, because they could opt out or object to the proposed settlement. It also found they had not met their burden to show that California Plaintiffs inadequately represented their interest, reasoning that California Plaintiffs performed extensive litigation activity in this case and no evidence showed they colluded with defendants. Turning to permissive intervention, the court found intervention inappropriate on that ground too because Colorado Plaintiffs could opt out or object to the settlement and, if allowed to intervene, would enlarge the issues and delay resolution of this case.

Colorado Plaintiffs timely appealed the trial court's decision. (See *Hodge v. Kirkpatrick Development, Inc.* (2005) 130 Cal.App.4th 540, 547 ["An order denying a

5

motion for leave to intervene is directly appealable because it finally and adversely determines the moving party's right to proceed in the action"].)

### III

### *Approval of the Settlement*

After the trial court denied the motion to intervene, California Plaintiffs filed a motion for preliminary approval of the proposed settlement. They also prepared an amended complaint that would supplant Hamilton's PAGA complaint and be filed in the event the court granted preliminary approval. In the proposed amended complaint, California Plaintiffs alleged putative FLSA collective and class action claims against defendants that were nationwide in scope. They also alleged a cause of action under PAGA. The proposed amended complaint defined the class and the FLSA collective to include all non-exempt employees who, over a defined period, "worked for and were employed by . . . The Vail Corporation d/b/a Vail Resorts Management Company, and all of its parent corporations, subsidiaries, and other affiliates . . ., in the United States and worked primarily at one of its resort locations or mountain facilities."

The court preliminarily approved the settlement. It then directed California Plaintiffs to file their amended complaint (which they did) and to provide notice of the proposed settlement to potential class and collective action members. The next month, the settlement administrator sent notice of the proposed settlement to over 100,000 individuals.

California Plaintiffs filed a motion for final approval of the settlement shortly after. Over Colorado Plaintiffs' objection, and after applying a presumption that the settlement was fair, the court certified the class for settlement purposes and granted final approval of the settlement. The approved settlement included a recovery of up to $13.1 million, with class counsel taking about $4.37 million of this amount (a third of the total).

6

Gibson received a $50,000 payment in exchange for a general release and waiver of all claims. The remaining named plaintiffs each received a $10,000 incentive award.

In exchange for this recovery, the settlement extinguished the claims of tens of thousands of current and former employees of defendants and their parent corporations, subsidiaries, and affiliates. The settlement explained that covered individuals would have their class claims extinguished unless they opted out of the settlement. It further explained that covered individuals would have their FLSA claims extinguished only if they opted into the settlement. In treating the class and FLSA claims differently in this respect, the settlement hinted at a key difference between class actions and FLSA collective actions. "Class actions under California and federal law generally require class members to opt out to avoid being bound by the terms of a judgment. In contrast, an employee must opt in to become a plaintiff in an FLSA collective action." (*Amaro v. Anaheim Arena Management, LLC* (2021) 69 Cal.App.5th 521, 539.)

Colorado Plaintiffs moved to set aside and vacate the judgment approving the settlement—a procedural step they needed to take to have standing to challenge the judgment on appeal. (*Hernandez v. Restoration Hardware, Inc.* (2018) 4 Cal.5th 260, 267 [unnamed class members may become a party with the right to appeal either by intervening or "filing an appealable motion to set aside and vacate the class judgment under [Code of Civil Procedure] section 663"]; *County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 736 [those who are "denied the right to intervene in an action ordinarily may not appeal from a judgment subsequently entered in the case," unless they "become a party of record and obtain a right to appeal by moving to vacate the judgment pursuant to Code of Civil Procedure section 663"].) But the trial court denied the motion, and Colorado Plaintiffs then timely appealed. We later consolidated Colorado Plaintiffs' two appeals.

7

DISCUSSION

I

*Appeal of the Denial of Intervention*

We start with Colorado Plaintiffs' appeal of the order denying intervention. They contend the trial court should have granted their request to intervene, either because they met the requirements for mandatory intervention or because they met the requirements for permissive intervention. We agree the court should have granted their request for mandatory intervention.

A.    *Code of Civil Procedure Section 387*

Code of Civil Procedure section 387 (section 387) sets forth the rules for intervention. Relevant here, it provides that a "court shall, upon timely application, permit a nonparty to intervene in the action or proceeding if" that nonparty "claims an interest relating to the property or transaction that is the subject of the action and that person is so situated that the disposition of the action may impair or impede that person's ability to protect that interest, unless that person's interest is adequately represented by one or more of the existing parties." (§ 387, subd. (d)(1)(B).) To break this down, a court must allow a nonparty to intervene if the nonparty (1) files a timely motion, (2) shows an interest in the action, (3) demonstrates that disposition of the action may impair or impede the nonparty's ability to protect this interest, and (4) shows that the existing parties will not adequately represent the nonparty's interest.

B.    *Standard of Review*

Our standard of review when a trial court denies mandatory intervention is unsettled. (*State Water Bd. Cases* (2023) 97 Cal.App.5th 1035, 1043.) For a long time, section 387 spoke only of permissive intervention. (*People v. Superior Court (Good)* (1976) 17 Cal.3d 732, 736 [quoting text of § 387].) Trial courts had broad discretion under the statute to grant or deny a motion to intervene, and so appellate courts reviewed

8

a trial court's denial of intervention for abuse of discretion. (*Good,* at pp. 736-737; *County of Alameda v. Carleson, supra*, 5 Cal.3d at p. 736, fn. 4.) But in 1977, the Legislature amended section 387 to allow for both permissive intervention and mandatory intervention. (Stats. 1977, ch. 450, p. 1486, § 1.)

Courts of Appeal since have questioned the standard of review for mandatory intervention. (See, e.g., *State Water Bd. Cases, supra*, 97 Cal.App.5th at p. 1043; *Edwards v. Heartland Payment Systems, Inc.* (2018) 29 Cal.App.5th 725, 732 (*Edwards*).) Most have settled on a few conclusions. One, the standard of review is either de novo or abuse of discretion. Two, section 387's text tracks the text of its federal counterpart: rule 24 of the Federal Rules of Civil Procedure (28 U.S.C.; Rule 24). And three, because the Legislature appears to have modeled section 387 on Rule 24, California courts can look to federal courts for guidance on the standard of review. (*State Water Bd. Cases*, at p. 1043; *Accurso v. In-N-Out Burgers* (2023) 94 Cal.App.5th 1128, 1139-1140, review granted Nov. 29, 2023, S282173 (*Accurso*); *Edwards*, at pp. 732-733.)

Some courts have ventured further. One court concluded that California courts should review a trial court's denial of mandatory intervention de novo, reasoning in part that this approach would be consistent with federal case law. (*Accurso, supra*, 94 Cal.App.5th at p. 1140, review granted.) Other courts, while stopping short of endorsing a particular standard of review, have likewise concluded that federal courts review these decisions de novo. (See, e.g., *Edwards, supra*, 29 Cal.App.5th at p. 732.) But another court has disagreed, concluding that federal case law varies across circuits. (*Crestwood Behavioral Health, Inc. v. Lacy* (2021) 70 Cal.App.5th 560, 573.)

Our view largely aligns with the last of these courts. To start, consistent with other courts, we agree section 387's language tracks that of Rule 24—which we find important. Rule 24's mandatory intervention language took its current general form in 1966. (See Amendments to Rules of Civil Procedure (1966) 39 F.R.D. 69, 109.) Section

387 followed suit in 1977, when the Legislature adopted nearly verbatim Rule 24's language on mandatory intervention. (Stats. 1977, ch. 450, p. 1486, § 1.) The Legislature's doing so strongly suggests that it modeled section 387 on Rule 24. And the legislative history confirms this. According to one committee report, the proposed changes to section 387 "parallel the procedures set by the Federal Rules of Civil Procedure." (Assem. Office of Research, 3d reading analysis of Sen. Bill No. 750 (1977 Reg. Sess.) as amended Jun. 1, 1977, p. 1.) And according to another, the proposed changes "would incorporate the language of [Rule] 24(a) into [section] 387." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 750 (1977 Reg. Sess.) as introduced Mar. 31, 1977, p. 2.)

Apart from finding similar language in these two rules, we also agree that California courts may look to federal courts for guidance on section 387. Because section 387 was modeled on Rule 24, "we presume the Legislature intended to adopt the construction employed by the federal courts." (*In re M.S.* (1995) 10 Cal.4th 698, 713, fn. 5.) Courts have typically employed this presumption in interpreting the statutory text of state laws modeled on federal law, not in divining the standard of review governing applications of this text. (See *ibid.*) But in the absence of clear California case law on the appropriate standard of review here, we at least find federal case law potentially instructive. Our view, in this respect, aligns with existing California case law on this topic. (See, e.g., *State Water Bd. Cases, supra*, 97 Cal.App.5th at p. 1043; *Edwards, supra*, 29 Cal.App.5th at p. 732.)

Although we find federal case law potentially instructive, we find few definitive answers there. Some federal appellate courts have generally stated that they review a district court's denial of mandatory intervention de novo. (See, e.g., *Medical Liability Mut. Ins. Co. v. Alan Curtis LLC* (8th Cir. 2007) 485 F.3d 1006, 1008.) But some have found it better to review these decisions for abuse of discretion. (See, e.g., *Victim Rights*

*Law Center v. Rosenfelt* (1st Cir. 2021) 988 F.3d 556, 559 [adding, among other things, that even under the abuse of discretion standard, abstract legal rulings are still reviewed de novo].)  And although the Supreme Court has provided some guidance, it has been limited to date.  It has said, for instance, that timeliness—both for mandatory and permissive intervention—"is to be determined by the court in the exercise of its sound discretion; unless that discretion is abused, the court's ruling will not be disturbed on review."  (*NAACP v. New York* (1973) 413 U.S. 345, 366.)  It has also applied an abuse of discretion standard in reviewing adequacy of representation under Rule 24.  (*Georgia v. Ashcroft* (2003) 539 U.S. 461, 477.)  But more recently, it declined to confirm whether this standard in fact applies.  (*Berger v. North Carolina State Conference of the NAACP* (2022) 597 U.S. 179, 200, fn. * (*Berger*).)

In the end, leaving some issues for another day, we will review the trial court's decision here in part de novo and in part for abuse of discretion.  We will review timeliness de novo, for while timeliness is generally reviewed for abuse of discretion, the trial court here made no finding at all on timeliness.  So we must make our own determination on that topic.  (*Cook v. Boorstin* (D.C. Cir. 1985) 763 F.2d 1462, 1468.) We will also review the trial court's decision concerning Colorado Plaintiffs' interest in this action and potential impairment of that interest de novo, for in this case, both issues center on pure issues of law.  (*Guardianship of Saul H.* (2022) 13 Cal.5th 827, 847; *Fund For Animals, Inc. v. Norton* (D.C. Cir. 2003) 322 F.3d 728, 732.)  Lastly, for the trial court's decision on adequacy of representation, we find it unnecessary to weigh in on the appropriate standard of review.  That is because, as covered below, we find reversal appropriate even under the more deferential abuse of discretion standard.

C.  *Timeliness*

With this shifting standard of review in mind, we turn to the requirements for mandatory intervention.  First, as no party disputes, Colorado Plaintiffs met their burden to show that they timely filed their motion to intervene.

In evaluating timeliness, we consider the totality of the circumstances.  (*NAACP v. New York, supra*, 413 U.S. at p. 366.)  In this case, Colorado Plaintiffs had no reason to intervene in this action (and likely could not have intervened) until California Plaintiffs reached a settlement agreement with defendants.  Before that time, after all, this action focused only on California law, with Hamilton pursuing a single PAGA cause of action based on alleged violations of the California Labor Code.  Colorado Plaintiffs had no clear interest in this California-specific litigation, for in their complaint against defendants, they only alleged that they suffered harm in Colorado.  Nor did they have any reason to know of this California action before the settlement, as the trial court acknowledged.

After learning the scope of this action would expand, however, Colorado Plaintiffs promptly moved to intervene.  On October 29, 2021, California Plaintiffs and defendants noted their intent to seek approval of a nationwide class settlement in this action, which would fully resolve and release all outstanding claims raised in the Colorado action.  Three weeks later, Colorado Plaintiffs moved to intervene.  We find their motion timely.

D.  *Interest in Action*

Next, as the trial court appeared to accept, Colorado Plaintiffs met their burden to show that they have an interest relating to the property or transaction that is the subject of this action.  No party disputes this point either.

To support intervention, a proposed "intervener's interest must be direct rather than consequential, and determinable in the action."  (*People v. Superior Court (Good), supra*, 17 Cal.3d at p. 736; see also *Donaldson v. United States* (1971) 400 U.S. 517, 531

12

[Rule 24 requires "a significantly protectable interest"].)  Colorado Plaintiffs demonstrated such an interest here.  At the time of the motion to intervene, California Plaintiffs planned to seek approval of a nationwide settlement in this action; and if that settlement were approved, it would extinguish Colorado Plaintiffs' claims.

Under these circumstances, Colorado Plaintiffs clearly had an interest in this action.  (*Technology Training Associates, Inc. v. Buccaneers Limited Partnership* (11th Cir. 2017) 874 F.3d 692, 696 (*Technology Training*) [proposed intervenors "have an interest in this case because, as class members, they will be bound by the terms of the settlement if it is approved and judgment is entered"]; *In re Community Bank of Northern Virginia* (3d Cir. 2005) 418 F.3d 277, 314 [absent class members have an interest in the case "by the very nature of [class action] representative litigation"].)

E.      *Impairment of Interest*

For similar reasons, Colorado Plaintiffs met their burden to show that disposition of this action may impair or impede their ability to protect their interest.  (§ 387, subd. (d)(1)(B).)

At the time of their motion to intervene, again, California Plaintiffs and defendants had reached a settlement that, if approved, would bind a nationwide class that included Colorado Plaintiffs.  Colorado Plaintiffs, then, faced at this time the risk that California Plaintiffs would pursue an unsatisfactory class action settlement, bind them to this settlement, and extinguish their claims.  On these facts, we conclude that Colorado Plaintiffs have shown that disposition in this action "*may*" impair or impede their ability to protect their interest.  (§ 387, subd. (d)(1)(B), italics added; see *Technology Training, supra*, 874 F.3d at pp. 696-697 ["the risk that the movants will be bound by an unsatisfactory class action settlement satisfies [the impairment requirement]"]; *In re Community Bank of Northern Virginia, supra*, 418 F.3d at p. 314 [absent class members' interest may be impaired "by the very nature of [class action] representative litigation"].)

13

In finding otherwise, the trial court relied on *Edwards, supra*, 29 Cal.App.5th 725. In that case, absent class members (i.e., class members who were not named plaintiffs) sought to intervene in a putative class action suit after learning the named plaintiff had entered into a proposed settlement with the defendant. (*Id.* at p. 728.) The court, however, found mandatory intervention inappropriate. It noted that the absent class members "truly only s[ought] one goal—to challenge the adequacy of the settlement." (*Id.* at p. 733.) It then concluded that under these circumstances, the absent class members' "ability to protect their interest would not be practically impaired or impeded by the settlement . . . because they could opt out of or object to the settlement." (*Ibid.*) The trial court here found this reasoning "directly on point," concluding that Colorado Plaintiffs' ability to opt out or object rendered intervention unnecessary.

We find the trial court's reliance on *Edwards* misplaced. To start, we note that federal case law on mandatory intervention under Rule 24—which again, was the inspiration for section 387—is largely inconsistent with *Edwards*. Take *Technology Training, supra*, 874 F.3d 692. Absent class members there sought to intervene to challenge a proposed class action settlement. (*Id.* at p. 695.) Tracking the reasoning of *Edwards*, the district court denied intervention, largely because it believed the class members' general procedural rights, including their right to object, made intervention unnecessary. (*Id.* at p. 696.) But the Eleventh Circuit reversed. It concluded that a court could not deny intervention simply because class members "have recourse to [class action] procedural protections." (*Ibid.*) The Eighth Circuit found likewise in *Swinton v. SquareTrade, Inc.* (8th Cir. 2020) 960 F.3d 1001, finding " 'surely wrong' " the logic " 'that class members are not entitled to intervene because they can protect their interests by opting out of the class.' " (*Id.* at pp. 1004-1005.) And consistent with both these cases, an oft-cited treatise on federal procedure states that "the availability of [class action] procedural protections"—including the right to opt out of the class—"does not

14

automatically bar class members from showing that disposition of the action will impair or impede their ability to protect their interests." (6 Moore's Federal Practice - Civil (2024) § 24.03.)

All these authorities appear inconsistent with *Edwards*. We need not, however, address the merits of *Edwards* here. It is enough for our purposes that this case is readily distinguishable. *Edwards*, again, cabined its holding to cases involving absent class members who "truly only seek one goal—to challenge the adequacy of the settlement." (*Edwards, supra*, 29 Cal.App.5th at p. 733.) But Colorado Plaintiffs' principal goal here was different. They sought to intervene to file a motion to dismiss, arguing this case should be dismissed under the first-filed rule in favor of the Colorado action. And had they been allowed to intervene, they would have been entitled to file this motion—even if, as the record shows, the trial court appeared inclined to reject the motion to dismiss. (*Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. Department of Interior* (10th Cir. 1996) 100 F.3d 837, 844 ["If a party has the right to intervene under Rule 24(a)(2), the intervenor becomes no less a party than others and has the right to file legitimate motions, including venue motions"].) Under these circumstances, we reject the trial court's conclusion that Colorado Plaintiffs' right to object or opt out was an adequate substitute for their right to intervene as a party. (See *ibid.*)

We also reject defendants' claim that *Edwards* cannot be distinguished. They argue that "[w]hat matters [under *Edwards*] is the non-parties' interests, not the procedural mechanism by which the non-party seeks to protect those interests, whether via an objection to settlement, opposition to preliminary settlement approval, or motion to dismiss." So, they assert, Colorado Plaintiffs cannot distinguish *Edwards* on the ground that "the proposed interveners there sought to challenge the settlement, whereas here, Colorado Plaintiffs sought to dismiss the entire . . . action." But defendants' position finds no support in *Edwards*. *Edwards*—whether rightly or wrongly—concluded that the

15

absent class members before it could not intervene because they sought only to challenge the adequacy of the settlement. It reasoned that even without intervening, these class members could still file objections challenging the settlement, or, alternatively, could opt out of the class, making intervention unnecessary to accomplish their "one goal—to challenge the adequacy of the settlement." (*Edwards, supra*, 29 Cal.App.5th at p. 733.) In the court's view, then, that the absent class members sought only to challenge the adequacy of the settlement was a critical consideration. And again, those are not the circumstances of this case.

F. *Adequacy of Representation*

Turning to the final requirement for mandatory intervention, Colorado Plaintiffs met their burden to show that their interest would not be adequately represented by California Plaintiffs. Our analysis proceeds in three parts. First, we cover the standard for showing inadequacy of representation. Next, we cover the requirement of personal jurisdiction, focusing on cases holding that a court in one state generally cannot exercise personal jurisdiction over the claims of individuals from other states. Last, we discuss the implications of those cases here. We find these cases created a powerful incentive for California Plaintiffs to settle with defendants to overcome potential personal jurisdiction issues for the many out-of-state claims raised in this case. Under these circumstances, we conclude the trial court abused its discretion in finding Colorado Plaintiffs had not met their burden to show inadequacy of representation.

1. *Standard For Showing Inadequacy of Representation*

We begin with the standard for showing inadequacy of representation. To establish that an existing party is an inadequate representative, proposed intervenors typically face a low bar. They need only show that representation of their interests " 'may be' inadequate; and the burden of making that showing should be treated as minimal." (*Trbovich v. United Mine Workers* (1972) 404 U.S. 528, 538, fn. 10

16

[discussing Rule 24]; see also *In re M.S., supra*, 10 Cal.4th at p. 713, fn. 5 ["When a state statute is modeled on a federal statute we presume the Legislature intended to adopt the construction employed by the federal courts"]; *Accurso, supra*, 94 Cal.App.5th at p. 1138, review granted [finding " 'minimal' " showing can be sufficient].)

Some courts, however, have required a heightened showing when the existing party and the proposed intervenor share the same objective, finding a presumption of adequate representation in these circumstances. (*Berger, supra*, 597 U.S. at p. 196 [noting some lower courts have adopted this presumption].) A subset of these cases, moreover, have specifically found this presumption appropriate in the context of class actions and FLSA collective actions, though they have differed on the showing necessary to overcome this presumption. The Fifth Circuit, for example, has applied a presumption of adequacy and said that "[t]o overcome this presumption, the movant must establish 'adversity of interest, collusion, or nonfeasance on the part of the existing party.' " (*Guenther v. BP Retirement Accumulation Plan* (5th Cir. 2022) 50 F.4th 536, 543 [class action].) The Eleventh Circuit, to give another example, has also applied a presumption of adequacy, though a less weighty one. It has said that this presumption is " 'weak; in effect, it merely imposes upon the proposed interven[o]rs the burden of coming forward with some evidence to the contrary.' " (*Technology Training, supra*, 874 F.3d at p. 697 [class action]; see *Burns v. MLK Express Services, LLC* (M.D. Fla. Apr. 16, 2020) 2020 WL 1891175, p. *3 [imposing the same presumption in an FLSA collective action].)

In this case, both Colorado Plaintiffs and defendants appear to agree that a presumption of adequate representation applies. But they dispute the showing necessary to overcome this presumption. Colorado Plaintiffs, favoring the Eleventh Circuit's approach, argue that this presumption is weak and can be overcome with " 'some evidence' " showing inadequacy. (*Technology Training, supra*, 874 F.3d at p. 697.) But defendants, citing a Ninth Circuit case, assert that the proposed intervenor can rebut this

17

presumption of adequacy only with a compelling showing to the contrary. (*Perry v. Proposition 8 Official Proponents* (9th Cir. 2009) 587 F.3d 947, 951 [compelling showing required when the party and the proposed intervenor share the same ultimate objective].)

We take a different approach, declining to apply any presumption of adequacy. While some courts, to be sure, presume adequate representation where a movant's interests are identical to those of an existing party, "this presumption applies only when interests 'overla[p] fully.' " (*Berger, supra*, 597 U.S. at p. 197.) In this case, for reasons we will expand on below, Colorado Plaintiffs' interests and California Plaintiffs' interests do not overlap fully. That is because California Plaintiffs had a significant incentive to settle with defendants to overcome potential personal jurisdiction issues, while Colorado Plaintiffs faced no comparable incentive. Both California Plaintiffs and Colorado Plaintiffs nonetheless may have retained similar overall interests. But "[w]here 'the absentee's interest is similar to, but not identical with, that of one of the parties,' that normally is not enough to trigger a presumption of adequate representation." (*Ibid.*)

2. *Requirement of Personal Jurisdiction*

We turn next to the requirement of personal jurisdiction. The Fourteenth Amendment's due process clause bars a state court from rendering a valid judgment against a defendant unless it has personal jurisdiction over the defendant. (*Bristol-Myers Squibb Co. v. Superior Court* (2017) 582 U.S. 255, 261-262 (*Bristol-Myers*).) A defendant may waive this requirement of personal jurisdiction. (*Insurance Corp. v. Compagnie des Bauxites* (1982) 456 U.S. 694, 704.) But absent waiver, a state court must have one of two types of personal jurisdiction to proceed—either "general (sometimes called all-purpose) jurisdiction [or] specific (sometimes called case-linked) jurisdiction." (*Ford Motor Co. v. Montana Eighth Judicial Dist.* (2021) 592 U.S. 351, 358 (*Ford*).)

18

General jurisdiction, as its name implies, allows a state court to exercise jurisdiction over all claims against a defendant, even claims unrelated to the state or the defendant's conduct there.  (*Ford, supra*, 592 U.S. at p. 358.)  But it exists only when the defendant is " 'essentially at home' " in the state—which, for a corporate defendant, is often said to be either its place of incorporation or its principal place of business.  (*Ibid.*)  Specific jurisdiction, in contrast, "covers defendants less intimately connected with a State, but only as to a narrower class of claims."  (*Id.* at p. 359.)  It exists for those claims arising out of or relating to the defendant's contacts with the state.  (*Ibid.*)  In general, then, a state court has personal jurisdiction over claims against a defendant only if those claims are sufficiently linked to the state (specific jurisdiction) or the defendant is essentially at home in the state (general jurisdiction).

Applying these principles in *Bristol-Myers*, the Supreme Court held that a state court could not entertain out-of-state claims against a defendant in a mass action, because it lacked personal jurisdiction over these claims.  In that case, hundreds of plaintiffs from California and 33 other states sued a pharmaceutical company in California court, alleging they suffered injuries because of one of the company's drugs.  (*Bristol-Myers, supra*, 582 U.S. at pp. 258-259.)  The company objected that California courts lacked personal jurisdiction over the nonresidents' claims.  (*Id.* at p. 259.)  And the Supreme Court ultimately agreed, focusing on specific jurisdiction.  Although the in-state and out-of-state plaintiffs raised similar claims and allegedly suffered the same injuries, the court found these similarities insufficient to allow the state to exercise specific jurisdiction over the nonresidents' claims.  (*Id.* at p. 265.)  It explained that the out-of-state plaintiffs still needed to show that their claims had an adequate link to California; and because they could not make that showing, California courts could not entertain their claims.  (*Id.* at pp. 264-266.)

19

Several courts since *Bristol-Myers* have found its reasoning requires courts to have personal jurisdiction over the claims of both named plaintiffs and absent class members in class actions. So in the absence of general jurisdiction, these courts have held that a court in one state cannot entertain the claims of absent class members from other states—unless these claims have the requisite connection to the forum state to support specific jurisdiction. (See, e.g., *Carpenter v. PetSmart, Inc.* (S.D. Cal. 2020) 441 F.Supp.3d 1028, 1035, 1041-1042 [concluding that it lacked personal jurisdiction over absent class members' claims that arose outside of California and that had an insufficient link to California]; *Smith v. Apple, Inc.* (S.D.N.Y. 2022) 583 F.Supp.3d 554, 565; *Gaston v. LexisNexis Risk Solutions, Inc.* (W.D.N.C. 2020) 483 F.Supp.3d 318, 338, fn. 13.)[1] Many courts have found similarly in FLSA collective actions, though in these cases, courts speak of named plaintiffs and opt-in plaintiffs rather than named plaintiffs and absent class members. Relying on *Bristol-Myers*'s reasoning, they have held that in the absence of general jurisdiction, a court in one state cannot entertain the claims of opt-in plaintiffs from other states—unless, again, these claims have the requisite connection to the forum state to support specific jurisdiction. (See, e.g., *Canaday v. Anthem Companies, Inc.* (6th Cir. 2021) 9 F.4th 392, 397 ["The principles animating *Bristol-Myers*'s application to mass actions under California law apply with equal force to FLSA collective actions under federal law"]; *Vallone v. CJS Solutions Group, LLC* (8th Cir. 2021) 9 F.4th 861, 865-866; *Fischer v. Federal Express Corp.* (3d Cir. 2022) 42 F.4th 366, 375 ["opt-in plaintiffs are required to demonstrate the court has personal jurisdiction

---

[1] Most courts, however, have held that a court does not need to have personal jurisdiction over the claims of absent class members, including three federal appellate courts. (See, e.g., *Mussat v. IQVIA, Inc.* (7th Cir. 2020) 953 F.3d 441, 447; *Lyngaas v. Curaden AG* (6th Cir. 2021) 992 F.3d 412, 435; *Kelly v. RealPage Inc.* (3d Cir. 2022) 47 F.4th 202, 211, fn. 7.)

with respect to each of their claims"]; *Vanegas v. Signet Builders, Inc.* (7th Cir. 2024) 113 F.4th 718, 724 [same].)[2]

### 3. *California Plaintiffs' Incentive to Settle*

With this legal context in mind, we turn to the facts of this case. California Plaintiffs' personal claims all concern defendants' conduct in California. But absent class members' claims and potential opt-in plaintiffs' claims predominantly concern defendants' conduct outside of California. And all parties in this appeal appear to accept that, absent defendants' consent, California courts would lack personal jurisdiction over these out-of-state claims. Considering the record before us, moreover, we cannot say that defendants are essentially at home in California, as required for general jurisdiction. Nor can we say on this record that the out-of-state claims had a sufficient link to California to warrant specific jurisdiction. So absent defendants' consent to suit, California courts would appear to lack personal jurisdiction over these claims.

That is potentially problematic for California Plaintiffs. As just covered, significant federal authority holds that a court cannot entertain claims of absent class members and opt-in plaintiffs unless the court has personal jurisdiction over these claims. The only exception is when the defendant waives personal jurisdiction. Under these authorities, then, California Plaintiffs could pursue the out-of-state claims of absent class members and opt-in plaintiffs only if defendants agreed to waive personal jurisdiction. Or to put it another way, under these authorities, California Plaintiffs could pursue the

---

[2] One federal appellate court and many federal district courts, however, have found otherwise, concluding that courts need not have personal jurisdiction over the claims of opt-in plaintiffs. But their reasoning has largely focused on the perceived broader jurisdiction of federal courts compared to state courts. (See, e.g., *Waters v. Day & Zimmermann NPS, Inc.* (1st Cir. 2022) 23 F.4th 84, 92-97 [finding *Bristol-Myers* distinguishable, in part, because it "rests on Fourteenth Amendment constitutional limits on state courts exercising jurisdiction over state-law claims"]; *Haro v. Walmart, Inc.* (E.D. Cal., Feb. 27, 2023) 2023 WL 2239333, p. *3.)

out-of-state claims only with defendants' blessing, creating a powerful incentive (and more, an inescapable need) for these plaintiffs to settle with defendants if they were to proceed with these claims. Otherwise, defendants could argue to the court, and very well could convince the court, that these claims should be dismissed for lack of personal jurisdiction. (See *Canaday v. Anthem Companies, Inc., supra*, 9 F.4th at p. 397 [FLSA collective action]; *Carpenter v. PetSmart, Inc., supra*, 441 F.Supp.3d at p. 1035 [class action].)[3]

None of this is to say, as Colorado Plaintiffs sometimes claim, that California Plaintiffs in fact colluded with defendants to achieve a settlement. But at the very least, it shows these plaintiffs had a significant incentive to settle with defendants to overcome this potential issue. It shows too that these plaintiffs, relative to Colorado Plaintiffs, had a diminished bargaining position. Colorado Plaintiffs, after all, sued in a state with general jurisdiction over Vail Resorts, The Vail Corporation, and Heavenly, for according to the record, all three are incorporated or have their principal place of business in Colorado. (See *Ford, supra*, 592 U.S. at p. 359 [a corporation is subject to general jurisdiction in its place of incorporation and principal place of business].) Colorado Plaintiffs, then, sued in a state that has personal jurisdiction over all claims against defendants, while California Plaintiffs sued in a state that arguably lacks the requisite jurisdiction over most claims raised in this case.

---

[3] Some federal courts—including the court where defendants, Gibson, and Saiz-Hawes initially indicated they would file their proposed settlement—have transferred class action suits from a state *without* general jurisdiction to a state *with* general jurisdiction, in part because of these same potential personal jurisdiction issues. (See, e.g., *D.L. Markham, DDS, MSD, Inc. v. Variable Annuity Life Insurance Company* (E.D. Cal., Mar. 25, 2022) 2022 WL 891290, p. *4, fn. 4; *Cienega v. Echo Global Logistics, Inc.* (E.D. Cal., Feb. 4, 2022) 2022 WL 348167, pp. *3, *5.)

Under these circumstances, and even assuming we review for abuse of discretion rather than de novo, we conclude the trial court abused its discretion in finding Colorado Plaintiffs failed to meet their burden to show that California Plaintiffs did not adequately represent their interest.  As another court has observed, an existing party's " 'greater willingness to compromise can impede [it] from adequately representing the interests of a nonparty.' " (*Technology Training, supra*, 874 F.3d at p. 697.)  So too can circumstances giving an existing party a "greater incentive" to compromise compared to the proposed intervenors.  (*Ibid.* [noting the risk that the plaintiffs' claims may have been time-barred gave "the plaintiffs a greater incentive to settle as compared to the movants"].)  That is the case here.  And neither California Plaintiffs nor defendants have even asserted differently in this appeal.[4]

## II

### *Appeal Concerning the Judgment Approving the Settlement*

We consider next Colorado Plaintiffs' appeal concerning the judgment approving the settlement.  They contend the trial court lacked both subject matter and personal jurisdiction, improperly struck some of their objections to the proposed settlement, sanctioned a defective settlement notice, wrongly certified the class action, and improperly found the settlement fair.  Although we reject several of their arguments, we

---

[4]  We do not, and ultimately need not, address whether these circumstances would prevent California Plaintiffs from being deemed adequate representatives for class certification purposes.  (See *In re Tobacco II Cases* (2009) 46 Cal.4th 298, 313 [class certification requires, among other things, proof that the class representatives can adequately represent the class].)  We will simply note that federal courts—which California courts often look to in class action matters—have "generally interpreted the 'adequately represented' prong of Rule 24 to set a lower bar than that of Rule 23," the federal rule dealing with class certification.  (3 Newberg and Rubenstein on Class Actions (6th ed. 2024) § 9:35; see *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021 [looking to federal precedent].)

conclude that the trial court improperly presumed the settlement was fair and that this error requires vacatur of the court's judgment.

A.  *Subject Matter Jurisdiction*

Starting with subject matter jurisdiction, Colorado Plaintiffs raise two arguments. First, they assert that the trial court lacked subject matter jurisdiction in this case because four related actions—the Heggen action, the Gibson action, the Roberds action, and the Hamilton I action—had earlier been removed to federal court.  We find differently.  The trial court, we agree, lacked subject matter jurisdiction over the cases that had been removed to federal court.  That is because once a notice of removal is filed, the state court " 'los[es] all jurisdiction over the case' " and " 'shall proceed no further unless and until the case is remanded.' "  (*Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano* (2020) 589 U.S. 57, 63.)  But this case—the Hamilton II action—has never been removed to federal court.  And even Colorado Plaintiffs' own cited authorities emphasize that "the removal statute only commands the state court to stay the case that was *actually* removed."  (*Kansas Public Employees Retirement System v. Reimer & Koger Associates, Inc.* (8th Cir. 1996) 77 F.3d 1063, 1069, italics added.)

Colorado Plaintiffs also suggest the trial court lacked subject matter jurisdiction for another reason.  They note that when a litigant files a separate state action for the purpose of subverting the federal removal statute, some federal courts have found that they have the authority to enjoin this action.  (See, e.g., *Kansas Public Employees Retirement System v. Reimer & Koger Associates, Inc., supra*, 77 F.3d at p. 1069.)  They then suggest that Hamilton filed such a separate state action when he filed this case to assert a PAGA claim, in part because, in doing so, he improperly split his claims.  But even if that is true, no court ever attempted to stay this action.  And while Colorado Plaintiffs sought an injunction in federal court, they never obtained one.  They asked several courts to enjoin defendants from moving forward with the settlement, including a

24

federal district court and the 10th Circuit; but both rejected their efforts. (*Quint v. Vail Resorts, Inc.* (10th Cir. 2023) 89 F.4th 803, 806.)

  B.  *Personal Jurisdiction*

  Turning to personal jurisdiction, Colorado Plaintiffs raise several arguments. They first argue that federalism concerns required the trial court to decline jurisdiction because Colorado (which has general jurisdiction over defendants) has a greater interest in this suit than California (which does not). We disagree. We acknowledge that federalism concerns can matter in evaluating personal jurisdiction. "[P]rotecting 'interstate federalism' " is in fact, together with "treating defendants fairly," one of "two sets of values" underlying the requirement of personal jurisdiction. (*Ford, supra*, 592 U.S. at p. 360.) But even so, when a defendant agrees to waive personal jurisdiction, federalism concerns cannot step in to deprive the court of personal jurisdiction. The Supreme Court long ago rejected the idea that federalism concerns could "operate[] as an independent restriction on the sovereign power of the court." (*Insurance Corp. v. Compagnie des Bauxites, supra*, 456 U.S. at p. 703, fn. 10.) And only last year, a plurality of the court wrote (and a majority agreed) that the court's "personal jurisdiction cases have never found a Due Process Clause problem sounding in federalism when an out-of-state defendant submits to suit in the forum State. After all, personal jurisdiction is a *personal* defense that may be waived or forfeited." (*Mallory v. Norfolk Southern Railway Co.* (2023) 600 U.S. 122, 144 (plur. opn.); see *id.* at p. 156 (conc. opn. of Justice Alito) [finding the same].) Because in this case, defendants agreed to waive personal jurisdiction, Colorado Plaintiffs cannot invoke the concept of federalism to override this waiver.

  Colorado Plaintiffs next argue "the trial court lacked personal jurisdiction over all Class Members because non-California residents did not have a 'significant contact or significant aggregation of contacts, creating state interests,' such that the application of

California law was neither 'arbitrary nor fundamentally unfair.' " But Colorado Plaintiffs distort the quote they rely on. The actual quote is from a plurality opinion and has nothing to do with personal jurisdiction. It instead concerns choice of law, with the plurality stating: "[F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." (*Allstate Ins. Co. v. Hague* (1981) 449 U.S. 302, 312-313 (plur. opn.).) The plurality added in a footnote that different rules govern personal jurisdiction and choice of law. (*Id.* at p. 317, fn. 23; see also *Hanson v. Denckla* (1958) 357 U.S. 235, 254 [distinguishing between personal jurisdiction and choice of law].)

Misciting another case, Colorado Plaintiffs suggest that California courts have personal jurisdiction to "approve a nationwide settlement only where: (1) the defendant's principal offices are located in California; (2) the defendant does business in California; (3) a significant number of class members are located in California; and (4) the wrongdoing occurred in California." (Italics & boldface omitted.) Colorado Plaintiffs derive this principle from *Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224. But that case too focused on choice of law, not personal jurisdiction. (See *id.* at p. 241.) It never even referred to personal jurisdiction. And although in their reply brief, Colorado Plaintiffs shift their argument to focus on choice of law, arguing there that the trial court wrongly applied both California procedural and substantive law, we decline to consider this belated argument. (*Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8.) We also decline to consider their related claim that the settlement violates the presumption against the extraterritorial application of state law. Although they at least raise this claim in their opening brief, they cite nothing in the record to support it. We thus will disregard it. (Cal. Rules of Court, rule 8.204(a)(1)(C) [each brief must "[s]upport any reference to a matter in the record by a citation to the

volume and page number of the record where the matter appears"]; *Jumaane v. City of Los Angeles* (2015) 241 Cal.App.4th 1390, 1406 [courts "may disregard any claims when no reference [to the record] is furnished"].)

Raising one final argument on personal jurisdiction, Colorado Plaintiffs contend "a California state court that lacks personal jurisdiction of non-California plaintiffs has no power to approve a nationwide settlement that would bind them." Not so. So far our discussion has focused on the due process rights of defendants. Here, though, Colorado Plaintiffs shift their attention to the due process rights of plaintiffs and suggest the same principles applicable to defendants apply to plaintiffs too. But they do not. As *Bristol-Myers* explains, different requirements protect the due process rights of defendants and plaintiffs. (*Bristol-Myers, supra*, 582 U.S. at p. 267.) And fatal to Colorado Plaintiffs' claim here, in discussing the due process rights of plaintiffs, the Supreme Court has held that "a forum State may exercise jurisdiction over the claim of an absent class-action plaintiff, even though that plaintiff may not possess the minimum contacts with the forum which would support personal jurisdiction over a defendant." (*Phillips Petroleum Co. v. Shutts* (1985) 472 U.S. 797, 811 (*Shutts*).)

C.     *Striking of Objections and Oppositions*

Next, Colorado Plaintiffs challenge the trial court's decision to strike the objections and oppositions they filed to California Plaintiffs' motion for preliminary approval of the settlement and motion for final approval of the settlement. The trial court struck Colorado Plaintiffs' objections and opposition to the motion for preliminary approval for "good cause" after defendants argued the filing was improper for various reasons. The court later struck Colorado Plaintiffs' objections and opposition to the motion for final approval, once more for "good cause," after defendants argued this filing too was improper for various reasons. Colorado Plaintiffs challenge both decisions here and, as relief, ask us to vacate the judgment approving the settlement.

27

But as California Plaintiffs and defendants note, Colorado Plaintiffs never show (or even argue) in their opening brief that the trial court's actions were prejudicial even if in error. (See Code Civ. Proc., § 475 [no decision may be reversed unless prejudicial]; *Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609 [appellants have the burden to show that reversal is appropriate].) They also gloss over that they filed other objections to the proposed settlement that were not stricken and that raised largely the same issues covered in the stricken objections and oppositions. At any rate, because we will direct the trial court to vacate the judgment for reasons covered below—and so grant Colorado Plaintiffs the relief they seek—we decline to consider their claims concerning the stricken objections and oppositions.

D. *Notice*

Colorado Plaintiffs also challenge the adequacy of the settlement notice, asserting that it was defective because it failed to disclose the Colorado action. We reject their argument.

Because the settlement here would bind absent class members and extinguish their claims for monetary damages, the Fourteenth Amendment's due process clause required these individuals to receive notice and an opportunity to be heard before the trial court entered judgment approving the settlement. (*Shutts, supra*, 472 U.S. at pp. 811-812.) In these types of cases, California law, like federal law, requires this notice to be provided after the class action has been certified or is proposed for certification for purposes of settlement. (Cal. Rules of Court, rules 3.766, 3.769(c); Fed. Rules Civ. Proc., rule 23(c)(2), (e)(1), 28 U.S.C.)

Describing the notice required following certification, the Supreme Court has said: "The notice must be the best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " (*Shutts, supra*, 472 U.S. at p. 812.) It has

added that the notice "should describe the action and the [class members'] rights in it," including their right to opt out. (*Ibid.*) Other courts have since described the standard for settlement notices. Some, for example, have said " '[n]otice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." ' " (*In re Hyundai and Kia Fuel Economy Litigation* (9th Cir. 2019) 926 F.3d 539, 567.) Others, to give another example, have said "the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.' " (*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.* (2d Cir. 2005) 396 F.3d 96, 114.) California courts have tended to cite the latter language. (See, e.g., *Duran v. Obesity Research Institute, LLC* (2016) 1 Cal.App.5th 635, 644; *Litwin v. iRenew Bio Energy Solutions, LLC* (2014) 226 Cal.App.4th 877, 883.)

Here, Colorado Plaintiffs argue that the settlement notice was flawed because it did not inform class members about the Colorado action or their ability to participate in it. They cite in support *Trotsky v. Los Angeles Fed. Sav. & Loan Assn.* (1975) 48 Cal.App.3d 134. In that case, settling litigants failed to inform both the trial court and absent class members about a related action and the effect of the settlement on that action. (*Id.* at pp. 145-146.) The court found this failure prevented a full and fair consideration of the adequacy of the settlement. (*Id.* at p. 146.) It also suggested that the notice failed to fairly apprise potential class members of their options, stating that notice of the related case would have been "highly significant" to class members in deciding whether to opt out or object and would have created a "powerful incentive" for class members to investigate whether the named plaintiff in this case or the related case better represented their interests. (*Id.* at pp. 151-152.) Citing this reasoning, Colorado

Plaintiffs assert that the settlement notice here was likewise flawed in failing to inform class members about the Colorado action and their ability to participate in it.

We reject Colorado Plaintiffs' argument and decline to follow *Trotsky* to the extent it suggests that a class notice necessarily violates the due process clause when it neglects to mention a related case. To begin, we agree the class members here would have been better informed about their options had they known about the Colorado action. We accept too that a notice including this type of information would, as a policy matter, be preferable, at least in some cases, for settling parties could readily provide this information and the information could potentially benefit class members seeking to investigate their options. But we are not persuaded that the Fourteenth Amendment's due process clause requires a settlement notice to discuss related cases. The due process clause establishes "minimal," not ideal, procedural requirements. (*Shutts, supra*, 472 U.S. at p. 812.) It is also flexible, "eschew[ing] rigid or formalistic limitations." (*Board of Regents v. Roth* (1972) 408 U.S. 564, 572.) Mindful of these considerations, we decline to find that a settlement notice that omits related cases has necessarily failed to fairly apprise potential class members of the settlement terms and their options.

In reaching this conclusion, we acknowledge, as the *Trotsky* court found, that information about related cases can be highly relevant. But it also may carry marginal relevance, as could be true, for instance, for a related case from a copycat plaintiff. The circumstances of the case matter. And even when information is highly relevant, its omission from a settlement notice does not necessarily violate the due process clause. All sorts of information can be highly relevant to class members, including the formula for calculating individual damages, the potential value of the class's claims, and existing objections to the settlement. Yet courts have declined to find that these details must be included in a settlement notice. (*Haggart v. Woodley* (Fed. Cir. 2016) 809 F.3d 1336, 1348 ["notice need not 'contain a formula for calculating individual awards' " or provide

30

"all relevant details"]; *Lane v. Facebook, Inc.* (9th Cir. 2012) 696 F.3d 811, 826 [due process "does not require an estimate of the potential value" of the class's claims]; *Rodriguez v. West Publishing Corp.* (9th Cir. 2009) 563 F.3d 948, 962 [notice not defective for failing to detail the content of objections to the settlement].)

Most relevant here, moreover, the Ninth Circuit in *Roes, 1-2 v. SFBSC Management, LLC* (9th Cir. 2019) 944 F.3d 1035, 1045 (*SFBSC Management*) rejected an argument mirroring Colorado Plaintiffs' own. In that case, the appellants—who were objectors to a class settlement—argued that the settlement notice should have disclosed two related cases. They reasoned that in omitting this information, "the notice did not provide sufficient information to allow class members to 'make an intelligent, informed decision about what to do.' " (*Id.* at p. 1044.) But the court rejected their claim. It wrote: "While it may be true that such information could have allowed class members to make a more 'informed' decision about their options, declining to include the information did not contravene the due process requirement to provide sufficient information about the settlement in this case." (*Id.* at p. 1045.)

We conclude similarly here. In this case, an 11-page settlement notice informed class members about the nature of the suit, the general settlement terms, their estimated share of the settlement, their ability to opt out and the consequence of failing to do so, their right to object and be heard, and more. If any class member desired more information, the notice also described several resources. They could contact the settlement administrator, inspect the court files, or request a copy of the settlement agreement. Courts have deemed this very type of information sufficient to satisfy due process requirements. (*Gooch v. Life Investors Ins. Co. of America* (6th Cir. 2012) 672 F.3d 402, 423 [" '[t]he contents of a . . . notice are sufficient if they inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, . . . that any class

31

member may appear and be heard at the hearing,' [citation], and 'information [about] the class members' right to exclude themselves and the results of failure to do so' "].)  And while, again, we accept that the settlement notice would have been more informative had it disclosed the Colorado action, we cannot say that the notice, simply because it omitted this information, failed to " 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.' " (*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., supra*, 396 F.3d at p. 114.)

E.      *Settlement and Certification*

Lastly, Colorado Plaintiffs challenge the settlement and certification of the class action.  Although their arguments on these topics are many, our discussion focuses on one—their contention that the trial court wrongly presumed the proposed settlement was fair.  We agree the court improperly presumed the settlement was fair, undermining the court's ultimate conclusion that the settlement was in fact fair.  We also find this improper presumption affected the court's decision to certify the class, for its decision to certify the class was tied to its decision finding the settlement fair.  For these reasons, we conclude that the trial court's judgment approving the settlement must be set aside.

Before final approval of a class action settlement, the trial "court must conduct an inquiry into the fairness of the proposed settlement." (Cal. Rules of Court, rule, 3.769(g).)  In conducting this inquiry here, the trial court believed a presumption of fairness applied under the reasoning of *Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794 (*Dunk*).  In that case, the court said "a presumption of fairness exists where:  (1) the settlement is reached through arm's-length bargaining; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small." (*Id.* at p.

32

1802.)  *Dunk* cited, in support, a prominent treatise on class actions—Newberg on Class Actions (now Newberg and Rubenstein on Class Actions).  (*Dunk,* at p. 1802.)

But *Dunk* itself involved a negotiated settlement *after* class certification, not *before*.  (*Dunk, supra*, 48 Cal.App.4th at p. 1800.)  And in a footnote, the *Dunk* court cautioned that "class action settlements should be scrutinized more carefully if there has been no adversary certification."  (*Id.* at p. 1803, fn. 9.)  The treatise *Dunk* cited says the same.  It explains that while courts have applied a presumption of fairness when the parties proposed a settlement for approval after class certification, courts have often taken a different approach "where the parties proposed a settlement for approval prior to class certification, as the danger of collusion [i]s greater in such circumstances."  (4 Newberg and Rubenstein on Class Actions, *supra*, § 13:45; see also *id.*, § 13:13 [noting that several circuits have "demanded closer inspection—at the final fairness hearing—of settlements that were proposed prior to class certification"].)

Case law bears this out.  The Ninth Circuit, for instance, has "never endorsed applying a broad presumption of fairness, but ha[s] actually required that courts do the opposite—by employing extra caution and more rigorous scrutiny—when it comes to settlements negotiated prior to class certification."  (*SFBSC Management, supra*, 944 F.3d at p. 1049.)  Many other federal courts have similarly demanded greater scrutiny of such settlements.  (*In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation* (3d Cir. 1995) 55 F.3d 768, 805; *Mars Steel Corp. v. Continental Illinois Nat. Bank and Trust* (7th Cir. 1987) 834 F.2d 677, 681.)  So too have California courts.  (*Carter v. City of Los Angeles* (2014) 224 Cal.App.4th 808, 819 ["When class certification is deferred to the settlement stage, a more careful scrutiny of the fairness of the settlement is required"]; *Dunk, supra*, 48 Cal.App.4th at p. 1803, fn. 9; see Cohelan

on California Class Actions (2023-2024 ed.) § 9:14 ["A precertification class settlement is reviewed on appeal using a 'higher standard of fairness' "].)[5]

Consistent with these authorities, we find a presumption of fairness inapplicable in this context. As another court has explained, "settlements negotiated prior to class certification are subject to a heightened risk that self-interest, even if not purposeful collusion, will seep its way into the settlement terms"—favoring a more probing inquiry than may normally be required. (*SFBSC Management, supra*, 944 F.3d at p. 1060.) As covered above, moreover, this risk is greater still here because of California Plaintiffs' incentive to settle with defendants to overcome potential personal jurisdiction issues. For these reasons, we find the trial court erred in presuming the settlement was fair under *Dunk*.

We further find that in improperly applying this presumption, the trial court abused its discretion. While a decision about the fairness of a settlement rests within the discretion of the trial court (*Clark v. American Residential Services LLC* (2009) 175 Cal.App.4th 785, 798), "[a]n abuse of discretion is shown when the trial court applies the wrong legal standard" (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733). That is the case here. (*In re Apple Inc. Device Performance Litigation* (9th Cir. 2022) 50 F.4th 769, 783 ["the district court abused its discretion by stating that it applied a presumption of reasonableness and fairness to the settlement"].) For similar reasons, we find the trial court's decision to certify the class problematic too. Because the court appeared to find certification appropriate on the ground that the settlement was fair, we

---

[5] The Ninth Circuit, moreover, has questioned whether a presumption of fairness should ever apply under federal law, particularly given "Congress' 2018 codification of standards for evaluating whether a proposed class settlement is 'fair, reasonable, and adequate.' " (*SFBSC Management, supra*, 944 F.3d at p. 1049, fn. 12 [a presumption of unfairness "is very likely inappropriate under the standards now codified"].)

conclude that the court's flawed presumption of fairness undermined both the fairness inquiry and its certification decision.[6]

Favoring a contrary conclusion, California Plaintiffs assert that California courts have actually permitted a presumption of fairness for precertification settlements, citing *Wershba v. Apple Computer, Inc., supra*, 91 Cal.App.4th 224. We agree that *Wershba* lends some support to their position. The court there, quoting *Dunk*, said "that California courts have recognized that 'class action settlements should be scrutinized more carefully if there has been no adversary certification.' " (*Id.* at p. 240.) It noted too "the heightened need for class protection in precertification settlements." (*Ibid.*) Yet it then proceeded to presume that the precertification settlement before it was fair, citing *Dunk* and its four-factor test in support. (*Id.* at p. 245.) We decline to follow that approach here. We instead believe the better practice is for courts to employ more searching scrutiny when evaluating precertification settlements—period—without applying any presumption of fairness. That is consistent with *Dunk*'s cautioning that these settlements should be scrutinized more carefully. (*Dunk, supra*, 48 Cal.App.4th at p. 1803, fn. 9.) And it is consistent with federal case law finding the same and rejecting any presumption of fairness. (See, e.g., *SFBSC Management, supra*, 944 F.3d at p. 1049; see *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 437 [noting California courts have looked to the procedures governing federal class actions for guidance on novel issues].)

---

[6] To the extent the court found certification appropriate because it believed the settlement was fair, we note that several courts have rejected this practice. (*Amchem Products, Inc. v. Windsor* (1997) 521 U.S. 591, 621-622 [federal courts cannot find certification proper simply because they believe a proposed settlement is fair]; *Luckey v. Superior Court* (2014) 228 Cal.App.4th 81, 94 [in the settlement-only class context, courts must find both that the settlement is fair and that certification is appropriate, with some "certification issues . . . requir[ing] heightened scrutiny"].)

35

California Plaintiffs further suggest that the trial court's presuming fairness was harmless, noting that the trial court followed *Kullar v. Foot Locker Retail, Inc.* (2008) 168 Cal.App.4th 116 and only applied an "initial" presumption of fairness. *Kullar* noted that the presumption of fairness under *Dunk* is an " 'initial presumption [that] must then withstand the test of the plaintiffs' likelihood of success.' " (*Id.* at p. 130.) And the trial court here, consistent with *Kullar*, stated the very same. Still, because the trial court improperly started with the presumption that the settlement was fair, we find this presumption—even if only labeled an initial presumption—undermined its entire analysis. (See *Costco Wholesale Corp. v. Superior Court, supra*, 47 Cal.4th at p. 733 ["An abuse of discretion is shown when the trial court applies the wrong legal standard"]; *In re Apple Inc. Device Performance Litigation, supra*, 50 F.4th at p. 783 ["while the district court's probing analysis suggests that it may have applied heightened scrutiny, its written order relied on a flawed legal standard," requiring reversal].)

Because we find reversal appropriate based on the trial court's flawed presumption of fairness, we decline to address Colorado Plaintiffs' remaining arguments concerning the settlement terms and class certification. We will not detail all these remaining arguments here. But we will note a couple issues that appeared to go unaddressed in the proceedings below and that warrant attention on remand.

First, the trial court should consider the propriety of the settlement's opt-in procedures for the FLSA collective action. The settlement requires the settlement administrator to send checks to all class members, and it provides that class members who cash these checks will be deemed to have opted into the FLSA collective action. The settlement notice mentioned this same opt-in procedure for potential members of the collective action. But the legitimacy of that practice is disputed. Some courts have approved settlements following this practice. (*Franco v. Ruiz Food Products, Inc.* (E.D. Cal., Nov. 27, 2012) 2012 WL 5941801, p. *24.) But others have rejected this practice,

36

some on the ground that this approach is inconsistent with the FLSA's language stating that " '[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.' " (*Smothers v. NorthStar Alarm Services, LLC* (E.D. Cal., Jan. 22, 2019) 2019 WL 280294, pp. *10-*11 [finding a settlement allowing this practice "fatally flawed"]; see, e.g., *Salinas v. Nestle Purina Petcare Company* (E.D. Cal., Apr. 19, 2024) 2024 WL 1722301, p. *15 ["Courts have repeatedly determined the cashing of a check to opt-in to an FLSA collective fails to satisfy the FLSA's requirement of written consent"].)

Second, the trial court should consider the propriety of another feature of the settlement's opt-in procedures. Both the settlement and the settlement notice contemplate that each covered individual will receive a single check containing both FLSA and class settlement payments. Some courts, however, have found this payment structure "suspect." (*Smith v. Kaiser Foundation Hospitals* (S.D. Cal., Nov. 7, 2019, No. 3:18-CV-00780-KSC) 2019 WL 5864170, p. *11.) They have reasoned that this structure offers no option for individuals who want to remain in the class and accept their class settlement payment, yet do not want to opt into the FLSA collective action. These individuals are instead left with an all-or-nothing choice—either opt into the FLSA collective action and take the payment, or forego compensation altogether. (*Ibid.*; see *Sharobiem v. CVS Pharmacy, Inc.* (C.D. Cal., Sept. 2, 2015) 2015 WL 10791914, p. *3 ["We question the legality of imposing such a penalty on the exercise of a federal right to not opt-in under the FLSA"].) We express no opinion here on the merits of these issues, nor do we mean to suggest that these are the only issues the trial court should address on remand. We simply note that the trial court should consider these and other appropriate issues on remand.

37

## DISPOSITION

The orders denying the motion to intervene and the motion to set aside and vacate the judgment are reversed.  The matter is remanded for further proceedings consistent with this opinion, including vacatur of the judgment approving the settlement and entry of an order granting Colorado Plaintiffs leave to intervene.  Colorado Plaintiffs are entitled to recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)

                                                    /s/
                                           BOULWARE EURIE, J.

We concur:


   /s/
ROBIE, Acting P. J.


   /s/
MESIWALA, J.